### A98A2416. EURE v. CANTRELL PROPERTIES, INC. et al.
(512 SE2d 323)

POPE, Presiding Judge.

Appellant Joseph L. Eure appeals from the trial court's order granting a motion to compel arbitration and stay pending arbitration filed by appellees Cantrell Properties, Inc. and Kay W. Cantrell.[1] Although we originally granted Eure's application for interlocutory appeal, because we have concluded that this Court lacks jurisdiction, we now dismiss the appeal.

Eure entered into a contract with Cantrell in August 1995 for the construction of a new home. The parties signed a New Construction Purchase and Sale Agreement (the Agreement), in which they acknowledged that a "voluntary 'Binding Arbitration Procedure'" existed under the Georgia Arbitration Code for the resolution of any disputes "provided all parties to this Agreement concur in writing to abide by same." Cantrell did not seek to enforce this provision, but rather moved for arbitration under the language of a limited warranty issued to Eure. Exhibit A to the parties' Agreement reflected that Cantrell would deliver to Eure a Builder Warranty and a Home Buyer Warranty on the property, and further provided that Eure agreed that Cantrell "shall not be liable for any defects not specifically provided for in the warranty. . . ."

In addition to the Agreement, Eure also signed Exhibit C to the Agreement, which stated that he had read the introduction and the limited warranty set out in a booklet entitled "Performance Standards and Supplement to the Real Estate Sale Agreement" (the Booklet) and acknowledged that the Booklet was "an integral part" of the parties' Agreement. The introduction to the Booklet provided that if Eure made a claim for corrective action under the limited warranty and Cantrell failed to take such action, Eure "shall commence Arbitration Proceedings with Construction Arbitration Associates, Ltd. ('CAA') in accordance with its rules and procedures." The introduction also reiterated that the Booklet was incorporated into the parties' Agreement by reference.

The limited warranty itself, Appendix A to the Booklet, provided that if Cantrell failed to make any inspection or tests or failed to

---

[1] For the sake of brevity, we will refer to the appellees jointly as "Cantrell." Kay Cantrell is the president of Cantrell Properties, Inc.

respond to any claim made under the warranty, Eure had 30 days "to commence arbitration proceedings with Construction Arbitration Associates, Ltd. ('CAA') in accordance with its procedures and rules." The warranty further provided that if Cantrell failed to correct a defect within a three-month period or if Eure was dissatisfied with the corrective work, then within 30 days Eure "shall commence and diligently pursue arbitration proceedings with the CAA, in accordance with the rules and procedures."

In May 1997 Eure sued Cantrell in Cobb Superior Court for breach of implied and express warranties, negligence and fraud, claiming that numerous construction defects existed in the property. In reliance upon the arbitration provisions found in the limited warranty, Cantrell moved pursuant to the Federal Arbitration Act (FAA), 9 USC §§ 1-16, to compel arbitration of these claims and to stay further proceedings pending arbitration. The trial court granted Cantrell's motion, and this appeal followed.

In support of the motion, Cantrell asserted that the Agreement evidenced a transaction involving interstate commerce in accordance with 9 USC § 2. In opposition, Eure contended that the Agreement was controlled by the Georgia Arbitration Code. The trial court granted Cantrell's motion under the FAA and certified the issue for immediate review. However, § 16 of the FAA provides that no interlocutory appeal may be had from an order granting a stay of any action pending arbitration or directing an arbitration to proceed under the FAA. 9 USC § 16 (b) (1) & (2).[2] Accordingly, if the FAA applies to the parties' Agreement, § 16 of the FAA would bar our consideration of this interlocutory appeal.[3]

The FAA provides that a "written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for

---

[2] 9 USC § 16 (b) provides:

"(b) Except as otherwise provided in section 1292(b) of title 28, an appeal may not be taken from an interlocutory order —
(1) granting a stay of any action under section 3 of this title;
(2) directing arbitration to proceed under section 4 of this title;
(3) compelling arbitration under section 206 of this title; or
(4) refusing to enjoin an arbitration that is subject to this title."

[3] The Practice Commentary to § 16 explains that this rule is intended to further the expeditious nature of arbitration and to limit delays caused by the appellate process where a matter is determined to be arbitrable. For the same reason, § 16 allows an appeal from an order *denying* a motion to stay or to compel arbitration, thus permitting any question of arbitration to be resolved before the costly litigation machinery is invoked. The Commentary states that a party who believes that his claims have been sent to arbitration improperly must wait until the award on the merits is rendered to raise the issue.

the revocation of any contract." 9 USC § 2. In determining whether a contract evidences a transaction involving commerce, federal rules of contract construction and interpretation govern. *Primerica Fin. Svc. v. Wise*, 217 Ga. App. 36, 37 (1) (456 SE2d 631) (1995); *ADC Constr. Co. v. McDaniel Grading*, 177 Ga. App. 223, 224 (1) (338 SE2d 733) (1985).

The U. S. Supreme Court has interpreted the phrase "involving commerce" as the functional equivalent of the phrase "affecting commerce" and has found that it "signals [an] intent to exercise [Congress' commerce] powers to the full." *Allied-Bruce Terminix Cos. v. Dobson*, 513 U. S. 265, 273-275 (III) (115 SC 834, 130 LE2d 753) (1995). Thus, the test under 9 USC § 2 is whether "the transaction in fact involve[d] interstate commerce, even if the parties did not contemplate an interstate commerce connection." (Punctuation omitted.) Id. at 281 (IV).

In support of its argument that the Agreement involves interstate commerce, Cantrell submitted evidence that materials used in the construction of Eure's home came from suppliers in at least fifteen states and three foreign countries. In addition, the home buyer's warranty that Eure purchased, and under which he has asserted claims, was issued by Home Buyers Warranty Corporation, a Colorado corporation. We find that this evidence is sufficient to show a transaction involving interstate commerce. See *Allied-Bruce Terminix Cos. v. Dobson*, 513 U. S. at 282 (Alabama termite treatment contract for individual's home involved interstate commerce where treatment supplier was a franchisee of an out-of-state corporation and where termite-treating and house-repairing materials used by supplier came from outside Alabama); *McKee v. Home Buyers Warranty Corp.*, 45 F3d 981, 984 (5th Cir. 1995) (Louisiana purchaser's home buyer's warranty with same Colorado corporation as in this case involved interstate commerce). See also *Brockett Pointe Shopping Center v. Development Contractors*, 193 Ga. App. 854, 856 (389 SE2d 374) (1989) (construction contract involved interstate commerce where out-of-state goods, services, materials and financing were supplied during execution of construction contract); *McCormick-Morgan, Inc. v. Whitehead Electric Co.*, 179 Ga. App. 10, 12 (345 SE2d 53) (1986) (contract involved interstate commerce where one contractor and materials from out of state); *ADC Constr. Co. v. McDaniel Grading Co.*, supra at 225 (1) (contract involved interstate commerce where contractor used out-of-state employee, sub-contractors and materials).[4]

---

[4] Compare *Columbus Anesthesia Group v. Kutzner*, 218 Ga. App. 51 (459 SE2d 422) (1995) (where involvement of interstate commerce occurs only after contract is fully performed); *Rhodes v. Inland-Rome, Inc.*, 195 Ga. App. 39 (392 SE2d 270) (1990) (same).

Accordingly, the FAA governs the arbitration agreement between the parties in this case. And because the FAA does not allow an appeal from an interlocutory order granting a motion to compel arbitration and stay pending arbitration, we lack jurisdiction to consider Eure's appeal. 9 USC § 16. See also *Dakota Wesleyan Univ. v. HPG Intl.*, 560 NW2d 921, 924 (S. D. 1997) and *Long v. Industrial Dev. Bd. of Vincent*, 619 S2d 1387, 1388 (Ala. 1993) (each case applying § 16 to dismiss appeal of order granting motion to compel arbitration). Cf. *SuperPumper, Inc. v. Nerland Oil*, 582 NW2d 647 (N. D. 1998) (bringing state appellate rules in accord with § 16); *Berger Farms v. First Interstate Bank of Oregon*, 939 P2d 64 (Or. App. 1997) (holding FAA controls jurisdiction over appeals under FAA where state law conflicts with § 16).

Therefore, because this appeal was improvidently granted, it is hereby dismissed.

*Appeal dismissed. Beasley, P. J., and Ruffin, J., concur.*

DECIDED FEBRUARY 11, 1999 —

*Charles F. Peebles, Lane R. Frostbaum*, for appellant.
*Chorey, Taylor & Feil, Celeste McCollough, Lisa F. Harper*, for appellees.

