768 A.2d 620

**Dale WELLS et al.**

v.

**CHEVY CHASE BANK, F.S.B. et al.**

**No. 22, Sept. Term, 2000.**

Court of Appeals of Maryland.

March 8, 2001.

234

F. Paul Bland, Jr. (Trial Lawyers for Public Justice, P.C., of Washington, D.C.;  John T. Ward and Thomas J. Minton of Ward, Kershaw & Minton, P.A., Baltimore, and Michael P. Malakoff of Malakoff, Doyle & Finberg, P.C., Pittsburgh), all on Brief, for appellants.

David J. Cynamon (Shaw Pittman, on brief) Washington, D.C., for appellees.

Walter E. Laake, Cary J. Hansel, Joseph, Grenwald & Laake P.A.. Greenbelt, brief of the Maryland Trial Lawyers Assn. filed on behalf of the appellants, amicus curiae

Argued before BELL, C.J., and ELDRIDGE, RODOWSKY,* RAKER, WILNER, CATHELL and HARRELL, JJ.

---

* Rodowsky, J., now retired, participated in the hearing and conference of this case while an active member of this Court;  after being recalled

RODOWSKY, Judge.

This appeal was taken from an order compelling arbitration. A preliminary procedural issue is whether Maryland law, which authorizes such appeals, has been preempted by 9 U.S.C. §§ 1 through 16, the Federal Arbitration Act (FAA). The substantive issue is whether the appellants, plaintiffs below, agreed to arbitrate. As explained below, we shall answer each issue in the negative.

The plaintiffs are Dale Wells of Ellicott City, Maryland, Sharon Goldenberg of Washington, D.C., and John Dovel of Falls Church, Virginia (the Plaintiffs). They sue Chevy Chase Bank, F.S.B. (Chevy Chase) and First U.S.A. Bank, N.A. (First U.S.A.) (collectively, the Defendants). Plaintiffs' first amended complaint alleges that the Defendants, in a number of aspects, breached the open end credit agreement (the Cardholder Agreement) in effect between Plaintiffs, as cardholders of credit cards issued by Chevy Chase, and Chevy Chase, as the card-issuing credit grantor.

Prior to January 16, 1996, Chevy Chase had maintained its home office in Maryland.[1] The Cardholder Agreement provided for an annual fee, a minimum late charge fee of fifteen dollars, described the method of computing the finance charge, and stated that the "ANNUAL PERCENTAGE RATE will never exceed 24%." With respect to amendments the Cardholder Agreement read:

"We may amend the terms of this Agreement in accordance with applicable law at any time. Also we may at any time add new credit services, discontinue any credit services, or replace your card with another card."

The Cardholder Agreement also contained a "Governing Law" provision reading:

---

pursuant to the Constitution, Article IV, Section 3A, he also participated in the decision and adoption of this opinion.

1. Regulations of the Office of Thrift Supervision, United States Department of the Treasury, state that "[a]ll operations of a Federal savings association shall be subject to direction from the home office." 12 C.F.R. § 545.91.

"This Agreement is made in Maryland. It is governed by Subtitle 9 ['Credit Grantor Revolving Credit Provisions'] of Title 12 ['Credit Regulations'] of the Commercial Law Article of the Maryland Annotated Code and applicable federal laws."

There was no mediation or arbitration provision in the Cardholder Agreement.

On or about January 16, 1996, Chevy Chase moved its home office to Virginia. With the periodic statements mailed in January and February of 1996 to its cardholders, Chevy Chase included a notice of change of terms of the Cardholder Agreement. The notice of change took the form of a restatement and revision of the Cardholder Agreement, with the new or revised terms italicized and, with respect to a waiver of jury trial provision, both italics and all uppercase print was used. Solely for purposes of this appeal, and without indicating any opinion on whether the Cardholder Agreement was effectively amended or whether the amendments are substantively valid, we shall call the product of the January and February mailings the "Amended Agreement." The Amended Agreement provided that it was made in Virginia and was "subject to and governed by Virginia law and applicable federal law and regulations." The Amended Agreement further recited that "[t]he parties agree that by engaging in activities with or involving each other, they are participating in transactions involving interstate commerce."

Also contained in the Amended Agreement was an alternative dispute resolution section which in relevant part reads:

*Mediation and Arbitration*—Any controversy or claim ('Claim') between or among you and us or our agents, employees and affiliates, including but not limited to those arising out of or relating to this Agreement or any related agreements, including without limitation any Claim based on or arising from an alleged tort, shall, *at the request* and expense *of the claiming party*, be submitted to mediation, using the rules of the American Arbitration Association ('AAA').

"If mediation fails to resolve the Claim within 30 days from the date of engagement, then the Claim shall be determined by binding arbitration. (Mediation or Arbitration, as appropriate, are sometimes referred to below as the 'Proceeding'.) Arbitration shall be conducted in accordance with the United States Arbitration Act (Title 9, U.S.Code), notwithstanding any choice of law provision in this Agreement, and under the rules of the AAA. Either you or we may, by summary proceedings (e.g., a plea in abatement or motion to stay further proceedings), bring an action in any court having jurisdiction for the sole purpose of compelling compliance with these mediation and arbitration provisions."

(Emphasis added).

On or about September 30, 1998, First U.S.A. purchased the credit card portfolio of Chevy Chase.

Plaintiffs instituted the instant action in January 1999. They allege that the defendants breached the Cardholder Agreement by charging interest in excess of twenty-four percent, by increasing the interest on past balances, by failing to provide legally required notice of the amendments, by changing the method of calculating the finance charge without proper notice, and by increasing the late fees and over-limit fees without proper notice. Plaintiffs also allege violation of the Maryland Consumer Protection Act, Maryland Code (2000 Repl.Vol.), §§ 13–101(d) and 13–303(3) of the Commercial Law Article (CL).

The principal theory of the Plaintiffs' case is that the Cardholder Agreement was never effectively amended. In this connection, Plaintiffs principally rely on CL § 12–912 that addresses amendment of the agreement governing a revolving credit plan. In broad strokes, that section requires, "at least 25 days before the effective date of the amendment," a clear and conspicuous written notice, "[i]f the amendment has the effect of increasing the interest, finance charges, or other fees and charges to be paid by the borrower ... or altering the manner of their computation." § 12–912(b)(1). The notice must include "[a] clear statement comparing the original

terms and the terms under the amended agreement." § 12–912(b)(1)(i). The initial notice is also to include "a statement that a second notice will be sent in the borrower's next periodic statement." § 12–912(c)(7). Both notices are to be in ten point type. *Id.* The notice is to advise of the cardholder's optional right to refuse the amendment and to describe the manner of refusing. § 12–912(c)(7)(ii). Where, as here, the plan charges an annual fee, rejection of the amendment entitles the cardholder to "use the account pursuant to its original, unamended terms, for ... [t]he duration of the time for which a fee was paid for use of the plan." § 12–912(c)(5)(i)1.

In addition, § 12–912(e) provides:

"If the terms of the agreement governing the plan, as originally drawn or amended[,] provide, any amendment may, on or after the date on which it becomes effective as to a particular borrower, apply to all then outstanding unpaid indebtedness in the borrower's account under the plan, including any indebtedness which shall have arisen out of purchases made or loans obtained prior to the effective date of the amendment."

Plaintiffs also seek to have their claims certified as a class action for a class consisting of

"[a]ll cardholders who had a Chevy Chase-issued Visa or MasterCard credit card prior to January 16, 1996 in which Chevy Chase agreed that the governing law would be Subtitle 9 of Title 12 of the Commercial Law Article of the Maryland Annotated Code and thereafter incurred any finance charges, late fees, or overlimit fees."

Defendants responded to the complaint by moving, pursuant to the FAA, to compel mediation/arbitration in accordance with the Amended Agreement. Plaintiffs' answer to the demand for arbitration was that they had never agreed to arbitrate. Principally, Plaintiffs contended that the Cardholder Agreement had never been effectively amended because the alleged failure to comply with CL § 12–912 caused the arbitration provision of the Amended Agreement, as well as its financial terms, to lack any contractual foundation. The De-

fendants made a twofold replication. First, they argued that the Amended Agreement was severable and that no provision in CL § 12–912 even addressed an arbitration provision in an open end credit plan.

The second ground argued by the Defendants was that § 12–912 was preempted by 12 C.F.R. § 560.2(a), a regulation of the Office of Thrift Supervision (OTS). That regulation undertakes to preempt by "occup[ying] the entire field of lending regulation for federal savings associations." *Id.*[2]

---

**2.** 12 C.F.R. § 560.2 in relevant part reads:

"(a) *Occupation of field.* Pursuant to sections 4(a) and 5(a) of the [Home Owners' Loan Act (HOLA) ], 12 U.S.C. 1463(a), 1464(a), OTS is authorized to promulgate regulations that preempt state laws affecting the operations of federal savings associations when deemed appropriate to facilitate the safe and sound operation of federal savings associations, to enable federal savings associations to conduct their operations in accordance with the best practices of thrift institutions in the United States, or to further other purposes of the HOLA. To enhance safety and soundness and to enable federal savings associations to conduct their operations in accordance with best practices (by efficiently delivering low-cost credit to the public free from undue regulatory duplication and burden), OTS hereby occupies the entire field of lending regulation for federal savings associations. OTS intends to give federal savings associations maximum flexibility to exercise their lending powers in accordance with a uniform federal scheme of regulation. Accordingly, federal savings associations may extend credit as authorized under federal law, including this part, without regard to state laws purporting to regulate or otherwise affect their credit activities, except to the extent provided in paragraph (c) of this section. . . . For purposes of this section, 'state law' includes any state statute, regulation, ruling, order or judicial decision.

"(b) *Illustrative examples.* . . . [T]he types of state laws preempted by paragraph (a) of this section include, without limitation, state laws purporting to impose requirements regarding:

. . . .

"(4) The terms of credit, including amortization of loans and the deferral and capitalization of interest and adjustments to the interest rate, balance, payments due, or term to maturity of the loan, including the circumstances under which a loan may be called due and payable upon the passage of time or a specified event external to the loan;

"(5) Loan-related fees, including without limitation, initial charges, late charges, prepayment penalties, servicing fees, and overlimit fees;

. . . .

Plaintiffs' rejoinder was that, as stated in 12 C.F.R. § 560.2(c)(1), § 560.2(a) does not preempt the contract law of a state. Plaintiffs assert that in the Cardholder Agreement Chevy Chase covenanted that it would comply with Subtitle 9 of Title 12 of the Maryland Commercial Law Article and that federal preemption cannot negate that promise. Defendants' surrejoinder was that Plaintiffs' rejoinder misinterpreted the governing law provision of the Cardholder Agreement and that, in any event, that which had been invalidated by federal preemption could not be incorporated by reference as governing law into a contract.

The circuit court granted the Defendants' motion to compel arbitration. Essentially the court reasoned that CL § 12–912 did not prevent the arbitration provision, which was viewed as severable from the other provisions of the Amended Agreement, from becoming part of the contract between the parties.

Plaintiffs appealed from that order to the Court of Special Appeals where they were met by a motion by the Defendants to dismiss the appeal on the ground that the Maryland law permitting an appeal from an order compelling arbitration was preempted by a provision of the FAA. The Court of Special Appeals denied the motion without prejudice to renewal at argument. Thereafter, we granted a petition for certiorari filed by the Plaintiffs and a cross-petition for certiorari filed by the Defendants which asserted a lack of appellate jurisdiction. *Wells v. Chevy Chase Bank,* 358 Md. 608, 751 A.2d 470 (2000).

---

"(9) Disclosure and advertising, including laws requiring specific statements, information, or other content to be included in credit application forms, credit solicitations, billing statements, credit contracts, or other credit-related documents and laws requiring creditors to supply copies of credit reports to borrowers or applicants;

. . . .

"(c) *State laws that are not preempted.* State laws of the following types are not preempted to the extent that they only incidentally affect the lending operations of Federal savings associations or are otherwise consistent with the purposes of paragraph (a) of this section:

"(1) Contract and commercial law. . . ."

I

Maryland Code (1974, 1998 Repl.Vol.), § 12–301 of the Courts and Judicial Proceedings Article (CJ) is the general appeals statute, conferring a right to appeal "from a final judgment entered in a civil or criminal case by a circuit court." Because an order of a circuit court compelling the parties in an action before it to arbitrate the underlying claim completely terminates the action in the circuit court, we have held that an order compelling arbitration is a final judgment and appealable under CJ § 12–301. *Horsey v. Horsey*, 329 Md. 392, 402–04, 620 A.2d 305, 310–12 (1993); *Litton Bionetics, Inc. v. Glen Constr. Co.*, 292 Md. 34, 41–42, 437 A.2d 208, 212 (1981). The Defendants submit that this application of CJ § 12–301 is preempted by FAA § 16(b)(2). In relevant part § 16 provides:

"(a) An appeal may be taken from—

. . . .

"(3) a final decision with respect to an arbitration that is subject to this title.

"(b) . . . [A]n appeal may not be taken from an interlocutory order—

"(1) granting a stay of an action under section 3 of this title; [and]

"(2) directing arbitration to proceed under section 4 of this title[.]"

9 U.S.C. § 16 (1994).

■ Because 9 U.S.C. § 16(a)(3) permits an appeal from "a final decision," and because the instant order to compel arbitration is a final judgment under Maryland procedural law, one might conclude that would dispose of the dismissal motion. Defendants, however, press a distinction found in the federal cases. They argue as follows:

"FAA § 16 does permit immediate appeals from 'a final decision with respect to an arbitration.' 9 U.S.C. § 16(a)(3). A 'final decision' is one that resolves an 'independent' action, in which the '*sole issue* before the district court is the arbitrability of the [underlying] dispute.' [*In re* ] *Pisgah*

*Contractors,* 117 F.3d [133,] 136 [ (4th Cir.1997) ] (quoting *Humphrey v. Prudential Sec., Inc.,* 4 F.3d 313, 317 (4th Cir.1993)) (emphasis in original). Where arbitration is only 'one issue among others for the district court to resolve,' the arbitration issue is considered to be 'embedded,' and an order compelling arbitration in such a case is an unappealable interlocutory order within the meaning of FAA § 16(b), even if the order compels arbitration of all substantive claims involved in the dispute. *Id.; American [Cas.] Co. v. L–J, Inc.,* 35 F.3d 133, 136 (4th Cir.1994). Because the Arbitration Order here was entered in the context of a larger breach of contract dispute, the arbitration issue was 'embedded' in appellants' contract and state statutory claims, and therefore the Arbitration Order is not an appealable 'final decision' for purposes of FAA § 16. *Pisgah Contractors,* 117 F.3d at 136."

Brief of Appellees at 6 n. 1. We shall assume, *arguendo,* that arbitrability in the instant matter is "embedded" in other issues, but we conclude that Maryland procedural law, under which the subject order to compel is a final judgment, is not preempted by the FAA.

The problem with Defendants' reliance upon 9 U.S.C. 16(b)(2) is that § 4 of the FAA, as well as § 3, expressly deal only with the procedure to be followed by the federal courts. The relevant texts of those two sections are:

"If *any suit* or proceeding be *brought in any of the courts of the United States* upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration."

9 U.S.C. § 3 (1994) (emphasis added).

"A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for

arbitration may petition any *United States district court* which, save for such agreement, would have jurisdiction under Title 28, in a civil action or in admiralty of the subject matter of a suit arising out of the controversy between the parties, for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement."

9 U.S.C. § 4 (1994) (emphasis added).

Further, although the United States Supreme Court has applied 9 U.S.C. § 2 to actions in state courts and given that statute preemptive effect over substantive provisions of state law, the Court has declined to decide whether §§ 3 and 4 apply in state court actions.[3] *See Southland Corp. v. Keating,* 465 U.S. 1, 16 n. 10, 104 S.Ct. 852, 861 n. 10, 79 L.Ed.2d 1, 15 n. 10 (1984) ("In holding that the Arbitration Act preempts a state law that withdraws the power to enforce arbitration agreements, we do not hold that §§ 3 and 4 of the Arbitration Act apply to proceedings in state courts. Section 4, for example, provides that the Federal Rules of Civil Procedure apply in proceedings to compel arbitration. The Federal Rules do not apply in such state-court proceedings").

The Court reiterated this limitation of its *Southland* holding in *Volt Info. Sciences, Inc. v. Board of Trustees of Leland Stanford Junior Univ.,* 489 U.S. 468, 109 S.Ct. 1248, 103 L.Ed.2d 488 (1989), stating:

---

3. Section 2 of the FAA provides:

"A written provision in any maritime transaction or contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of such a contract, transaction, or refusal, shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

"It is undisputed that this contract falls within the coverage of the FAA, since it involves interstate commerce, and that the FAA contains no provision authorizing a stay of arbitration in this situation. Appellee contends, however, that §§ 3 and 4 of the FAA, which are the specific sections claimed to conflict with the California statute at issue here, are not applicable in this state-court proceeding and thus cannot preempt application of the California statute. . . . While the argument is not without some merit, we need not resolve it to decide this case, for we conclude that even if §§ 3 and 4 of the FAA are fully applicable in state-court proceedings, they do not prevent application of Cal.Civ.Proc.Code Ann. § 1281.2(c) to stay arbitration where, as here, the parties have agreed to arbitrate in accordance with California law."

*Volt*, 489 U.S. at 476–77, 109 S.Ct. at 1254–55, 103 L.Ed.2d at 498–99 (footnote omitted). In a related footnote the Court explained:

"While we have held that the FAA's 'substantive' provisions— §§ 1 and 2—are applicable in state as well as federal court, see *Southland Corp. v. Keating*, 465 U.S. 1, 12, 104 S.Ct. 852, 859, 79 L.Ed.2d 1, 13 (1984), we have never held that §§ 3 and 4, which by their terms appear to apply only to proceedings in federal court, see 9 U.S.C. § 3 (referring to proceedings 'brought in any of the courts of the United States'); § 4 (referring to 'any United States district court'), are nonetheless applicable in state court. See *Southland Corp. v. Keating, supra*, at 16 n. 10, 104 S.Ct. at 861 n. 10, 79 L.Ed.2d at 15 n. 10 (expressly reserving the question whether ' §§ 3 and 4 of the Arbitration Act apply to proceedings in state courts'); see also *id.*, at 29, 104 S.Ct. at 867, 79 L.Ed.2d at 23–24 (O'CONNOR, J., dissenting) (§§ 3 and 4 of the FAA apply only in federal court)."

*Volt*, 489 U.S. at 476 n. 6, 109 S.Ct. at 1254 n. 6, 103 L.Ed.2d at 499 n. 6. The majority opinion in *Volt* also stated, "There is no federal policy favoring arbitration under a certain set of procedural rules; the federal policy is simply to ensure the enforceability, according to their terms, of private agreements

to arbitrate." *Id.* at 476, 109 S.Ct. at 1254, 103 L.Ed.2d at 498.

The common denominator of the recent United States Supreme Court decisions that have held state laws preempted by § 2 of the FAA seems to be that those state statutes targeted agreements to arbitrate and treated them less favorably than other contracts. In *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996), the Court found that FAA § 2 preempted a provision in a Montana statute regulating franchise agreements that voided a promise to arbitrate disputes, unless the provision was typed in capital letters, with underlining, on the first page of the franchise agreement. An Alabama statute which made written, pre-dispute arbitration agreements invalid was held to be preempted by FAA § 2 in *Allied–Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). There the Court rejected an interpretation of "a transaction involving commerce" in § 2 which would have limited the reach of the FAA to transactions where the parties contemplated substantial interstate activity. *Perry v. Thomas*, 482 U.S. 483, 107 S.Ct. 2520, 96 L.Ed.2d 426 (1987), held that FAA § 2 preempted a California statute which provided "that actions for the collection of wages may be maintained 'without regard to the existence of any private agreement to arbitrate.'" *Id.* at 484, 107 S.Ct. at 2523, 96 L.Ed.2d at 432. *Southland Corp. v. Keating, supra,* involved a California statute that regulated investments in franchises and prohibited contractual waiver of the benefits of the statute. The Supreme Court of California construed the statute to require adjudication of disputes under a franchise agreement in a judicial forum. The United States Supreme Court held that the statute, so construed, was preempted by FAA § 2. *Southland Corp.*, 465 U.S. at 10, 104 S.Ct. at 858, 79 L.Ed.2d at 11–12.

On the other hand, FAA § 2 preemption was held not to apply to a California procedural statute in *Volt, supra.* The statute addressed the problem of disputes among multiple parties some, but less than all, of whom had agreed to

arbitrate. The statute conferred a number of options on the trial court in which the actions were pending, including that of staying arbitration which the trial court did in *Volt.* There was no preemption because "the parties agreed to arbitrate in accordance with California law." *Volt,* 489 U.S. at 477, 109 S.Ct. at 1255, 103 L.Ed.2d at 499. It is noteworthy that the arbitration clause involved in *Volt* provided that the agreement " 'shall be specifically enforceable under the prevailing arbitration law.' " *Id.* at 470 n. 1, 109 S.Ct. at 1251 n. 1, 103 L.Ed.2d at 494 n. 1. The Court considered the "prevailing arbitration law" to be California law, and not the FAA, despite the fact that the contract, involving installation of a system of electrical conduits on the Stanford University campus, evidenced a transaction involving interstate commerce.

Most state courts which have faced the issue of whether the FAA prevented appeal of an order compelling arbitration hold that their own procedural rules govern appeals, unless those rules undermine the goals and principles of the FAA, and then those courts find that their procedural rules do not impermissibly undermine the objectives of the FAA.

For instance, in *Southern California Edison Co. v. Peabody Western Coal Co.,* 194 Ariz. 47, 977 P.2d 769 (1999), involving a dispute under a contract to supply coal to utilities in California and Nevada, the issue was whether an order to compel arbitration should be considered to be an appealable final judgment. The court looked to the FAA for guidance, but not as controlling law, saying that "[t]he FAA does not, however, require submission to federal procedural law" and "[e]ach state is free to apply its own procedural requirements so long as those procedures do not defeat the purposes of the [FAA]." *Peabody Western,* 977 P.2d at 773–74. Appellate jurisdiction over orders compelling arbitration was decided "on the basis of precedent, statutes, common sense, and what [the court] believe[d] to be good judicial policy for Arizona." *Id.* at 774. It was held that review would be given. The Arizona court declined to adopt the distinction applied by federal courts in FAA cases under which appeal is allowed if the arbitrability

issue is independent, but appeal is denied if the arbitrability issue is embedded in other issues in the case. *Id.*

In *Simmons Co. v. Deutsche Fin. Servs. Corp.*, 243 Ga.App. 85, 532 S.E.2d 436 (2000), the intermediate appellate court held that Georgia's rule allowing immediate appeal from an order compelling arbitration was not preempted by § 16 of the FAA because permitting immediate appeal did not undermine the purposes or objectives of the FAA. *Simmons*, 532 S.E.2d at 439. That court viewed the issue as one of a difference in the timing for an appeal from an order compelling arbitration and concluded that it made no difference to the objectives of the FAA whether an appeal was immediately permitted or only allowed after arbitration. *Id.* at 440.

Numerous other state courts have reached the same conclusion when confronted with an argument that the FAA preempts state procedures of various types. In *Rosenthal v. Great Western Fin. Sec. Corp.*, 14 Cal.4th 394, 58 Cal.Rptr.2d 875, 926 P.2d 1061, 1069 (1996), the court held that the recognition of a right to a jury trial in FAA § 4 did not preempt California's use of a summary procedure to decide a motion to compel arbitration. Quoting *Felder v. Casey,* 487 U.S. 131, 138, 108 S.Ct. 2302, 2306, 101 L.Ed.2d 123, 137 (1988), the court said, "It is a 'general and unassailable proposition . . . that States may establish the rules of procedure governing litigation in their own courts,' even when the controversy is governed by substantive federal law. . . . [H]owever, where state courts entertain a federally created cause of action, the 'federal right cannot be defeated by the forms of local practice.' " *Rosenthal,* 926 P.2d at 1069. *See also Collins v. Prudential Ins. Co.,* 752 So.2d 825, 828–30 (La.2000) (stating that "provisions of § 16 of the FAA governing the timing of appeals are procedural in nature and . . . states are free to follow their own procedural rules regarding appeals, unless those rules undermine the goals and principles of the FAA," but holding that under Louisiana law no right to an immediate appeal of an order compelling arbitration existed); *Atlantic Painting & Contracting Inc. v. Nashville Bridge Co.,* 670 S.W.2d 841, 846 (Ky.1984) (holding that the three

month limitation of FAA § 12 on a motion to vacate an award did not apply to a state court motion to vacate because "[t]he procedural aspects [of the FAA] are confined to federal cases"); *Weston Sec. Corp. v. Aykanian,* 46 Mass.App.Ct. 72, 703 N.E.2d 1185, 1189 (1998) (holding that FAA § 16(a)(3) did not preempt a state statute prohibiting appeal of an order to compel arbitration and reasoning that "[t]here is no reason to suppose that the *timing* of the exercise of the right of appeal from an order compelling arbitration is other than a procedural matter which does not alter the substantive rights of either party"), *rev. denied,* 429 Mass. 1107, 710 N.E.2d 604 (1999); *Xaphes v. Mowry,* 478 A.2d 299, 301 (Me.1984) (dismissing appeal for lack of final judgment that arguably would have been treated as final in federal practice and stating that "this Court is not compelled to apply a jurisdictional rule of the federal courts merely because the motion for a stay of [court] proceedings [pending arbitration] in this instance was filed pursuant to the [FAA]").

Other similar decisions are: *McClellan v. Barrath Constr. Co.,* 725 S.W.2d 656, 658 (Mo.Ct.App.1987) (applying Missouri law in holding order compelling arbitration unappealable because "[a]lthough 9 U.S.C. § 2 creates substantive rights to be enforced in state courts, the procedural provisions of the [FAA] are not binding on state courts ... provided applicable state procedures do not defeat the rights granted by Congress"); *Bush v. Paragon Property, Inc.,* 165 Or.App. 700, 997 P.2d 882, 887–88 (2000) (holding that FAA does not require appellate review of order, interlocutory under state law, denying motion to compel arbitration and overruling prior decision finding such a requirement); *Jack B. Anglin Co. v. Tipps,* 842 S.W.2d 266, 268 (Tex.1992) ("When Texas courts are called on to decide if disputed claims fall within the scope of an arbitration clause under the [FAA], Texas procedure controls that determination"); *Belmont Constructors, Inc. v. Lyondell Petrochemical Co.,* 896 S.W.2d 352, 355 (Tex.Ct.App.1995) (holding order denying arbitration appealable under Texas law and stating that "[a]lthough the [FAA] also permits a party to appeal from an interlocutory order denying a request to

compel arbitration, federal procedure does not apply in Texas courts, even when Texas courts apply the Federal Act" (footnote omitted)).

The Defendants cite us to *Eure v. Cantrell Properties, Inc.,* 236 Ga.App. 427, 512 S.E.2d 323 (1999), and to *Dakota Wesleyan Univ. v. HPG Int'l, Inc.,* 560 N.W.2d 921 (S.D.1997), in each of which appeals from orders compelling arbitration were dismissed as nonappealable. Thirteen months after *Eure* was filed, it was expressly overruled by *Simmons, supra,* 532 S.E.2d at 440. The reasoning and conclusion of *Dakota Wesleyan* was followed by the Supreme Court of North Dakota in *Superpumper, Inc. v. Nerland Oil, Inc.,* 582 N.W.2d 647 (N.D.1998). Neither case, on close reading, held that the FAA preempted state practice. Rather, both courts turned "to the FAA for guidance in determining" the issue of appealability. *Dakota Wesleyan,* 560 N.W.2d at 922; *Superpumper,* 582 N.W.2d at 651. The two courts adopted the federal independent issue-embedded issue distinction, decided that the cases presented embedded issues, and held that no appeal lay. The two courts supported their conclusions by finding that the policy of the FAA is against delay in the onset of arbitration. *Dakota Wesleyan,* 560 N.W.2d at 923; *Superpumper,* 582 N.W.2d at 652–53.

■ *Dakota Wesleyan* and *Superpumper* overstate the weight to be given to delay in the onset of arbitration. The policy against delay must be weighed against the more fundamental principle that a party who has not agreed to arbitrate a particular dispute cannot be compelled to arbitrate it. In *First Options of Chicago, Inc. v. Kaplan,* 514 U.S. 938, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995), the Supreme Court made the very relevant statement that "the basic objective in this area is not to resolve disputes in the quickest manner possible, no matter what the parties' wishes ... but to ensure that commercial arbitration agreements, like other contracts ' "are enforced...." ' " *Id.* at 947, 115 S.Ct. at 1925, 131 L.Ed.2d at 995. *See also Dean Witter Reynolds, Inc. v. Byrd,* 470 U.S. 213, 219, 105 S.Ct. 1238, 1242, 84 L.Ed.2d 158, 164 (1985) ("We

therefore reject the suggestion that the overriding goal of the [FAA] was to promote the expeditious resolution of claims. The [FAA], after all, does not mandate the arbitration of all claims, but merely the enforcement . . . of privately negotiated arbitration agreements").

■ In Maryland, pre-dispute agreements to arbitrate are enforceable. The general appeals statute does not focus on, or discriminate against, arbitration. Accordingly, we hold that the Maryland procedural rule, recognizing an order compelling arbitration to be a final and appealable judgment, is not preempted by the FAA.

## II

On the issue of whether the Plaintiffs agreed to arbitrate this dispute, we shall assume, *arguendo,* that the Cardholder Agreement has been validly amended, at least to the extent of including the mediation/arbitration provision, previously quoted. Our analysis begins, and in this case ends, with the words of the written contract.

■ The interpretation of a written contract is ordinarily a question of law for the court and, therefore, is subject to *de novo* review by an appellate court. *Auction & Estate Reps., Inc. v. Ashton,* 354 Md. 333, 341, 731 A.2d 441, 445 (1999); *Calomiris v. Woods,* 353 Md. 425, 434, 727 A.2d 358, 362 (1999); *Kendall v. Nationwide Ins. Co.,* 348 Md. 157, 170–71, 702 A.2d 767, 773 (1997); *JBG/Twinbrook Metro Ltd. Partnership v. Wheeler,* 346 Md. 601, 625, 697 A.2d 898, 911 (1997); *Suburban Hosp., Inc. v. Dwiggins,* 324 Md. 294, 306, 596 A.2d 1069, 1075 (1991). In determining the meaning of contractual language, Maryland courts have long adhered to the principle of the objective interpretation of contracts. *Ashton,* 354 Md. at 340, 731 A.2d at 444; *Calomiris,* 353 Md. at 435, 727 A.2d at 363; *Adloo v. H.T. Brown Real Estate, Inc.,* 344 Md. 254, 266, 686 A.2d 298, 304 (1996); *Maryland v. Attman/Glazer P.B. Co.,* 323 Md. 592, 604, 594 A.2d 138, 144 (1991); *Cloverland Farms Dairy, Inc. v. Fry,* 322 Md. 367, 373, 587 A.2d 527, 530 (1991); *Feick v. Thrutchley,* 322 Md. 111, 114, 586 A.2d 3, 4

(1991); *Aetna Cas. & Sur. Co. v. Insurance Comm'r*, 293 Md. 409, 420, 445 A.2d 14, 19 (1982). Under the objective interpretation principle, where the language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court. *Ashton*, 354 Md. at 340, 731 A.2d at 444; *Wheeler*, 346 Md. at 625, 697 A.2d at 911; *Insurance Comm'r*, 293 Md. at 420, 445 A.2d at 19. "If a written contract is susceptible of a clear, unambiguous and definite understanding . . . its construction is for the court to determine." *Rothman v. Silver*, 245 Md. 292, 296, 226 A.2d 308, 310 (1967).

Further, "[t]he clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean." *Ashton*, 354 Md. at 340, 731 A.2d at 444 (citing *Adloo*, 344 Md. at 266, 686 A.2d at 304; *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985); *Board of Trustees v. Sherman*, 280 Md. 373, 380, 373 A.2d 626, 629 (1977)). *See also Beckenheimer's Inc. v. Alameda Assocs. Ltd. Partnership*, 327 Md. 536, 547, 611 A.2d 105, 110 (1992) ("A party's intention will be held to be what a reasonable person in the position of the other party would conclude the manifestations to mean"). The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed. *Kasten Constr. Co. v. Rod Enters., Inc.*, 268 Md. 318, 329, 301 A.2d 12, 18 (1973); *Liller v. Logsdon*, 261 Md. 367, 370, 275 A.2d 469, 470–71 (1971); *Belmont Clothes, Inc. v. Pleet*, 229 Md. 462, 467, 184 A.2d 731, 734 (1962); *ST Sys. Corp. v. Maryland Nat'l Bank*, 112 Md.App. 20, 34, 684 A.2d 32, 39 (1996).

The arbitration clause in the Amended Agreement in this case is susceptible of but one reasonable interpretation. The promise is to mediate and, if necessary, arbitrate "at the request and expense of the claiming party." The Plaintiffs are the claiming parties, not the Defendants. This conclusion is neither altered, nor the language made ambiguous, by the provision in the next following paragraph reading: "Either

you or we may, by summary proceedings (e.g., a plea in abatement or motion to stay further proceedings), bring an action in any court having jurisdiction for the sole purpose of compelling compliance with these mediation and arbitration provisions." Ordering the claiming party to mediate and, "[i]f mediation fails" to arbitrate, when the claiming party has not requested mediation does not compel compliance with the mediation and arbitration clause provisions; rather, an order so compelling exceeds those provisions.

We recognize that neither party has argued the plain language of the mediation and arbitration clause. Nevertheless, whether Plaintiffs agreed to arbitrate has been the issue that was tried and decided in the circuit court, and the plain language meaning of the clause is simply an argument directed to that issue. See *Crown Oil & Wax Co. of Delaware, Inc. v. Glen Constr. Co. of Virginia, Inc.*, 320 Md. 546, 560–61, 578 A.2d 1184, 1190–91 (1990). In any event, even if the plain language meaning of the clause were considered to be a new issue, this Court has discretion to consider it. *Id.* at 561–62, 578 A.2d at 1191. Such an exercise of discretion is particularly appropriate when it avoids deciding the constitutional issue involving preemption by 12 C.F.R. § 560.2(a) of Maryland Code, CL § 12–912. *Baltimore Sun Co. v. Mayor & City Council of Baltimore*, 359 Md. 653, 659, 755 A.2d 1130, 1133–34 (2000); *Professional Staff Nurses Ass'n v. Dimensions Health Corp.*, 346 Md. 132, 138–40, 695 A.2d 158, 160–61 (1997).

*JUDGMENT OF THE CIRCUIT COURT FOR BALTIMORE CITY REVERSED. CASE REMANDED TO THAT COURT FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY THE APPELLEES.*