<u>**UNPUBLISHED**</u>

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

**No. 08-1332**

CDC-LCGH, LLC,

        Plaintiff - Appellant,

    v.

MAYOR AND CITY COUNCIL OF BALTIMORE,

        Defendant - Appellee.

Appeal from the United States District Court for the District of Maryland, at Baltimore. William D. Quarles, Jr., District Judge. (1:06-cv-02235-WDQ)

Argued: January 29, 2009      Decided: February 26, 2009

Before GREGORY and DUNCAN, Circuit Judges, and Arthur L. ALARCÓN, Senior Circuit Judge of the United States Court of Appeals for the Ninth Circuit, sitting by designation.

Affirmed by unpublished per curiam opinion.

**ARGUED:** Paul Reinherz Wolfson, WILMER, CUTLER, PICKERING, HALE & DORR, L.L.P., Washington, D.C., for Appellant. David Eugene Ralph, Mark Houston Grimes, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland, for Appellee. **ON BRIEF:** Andrew H. Baida, Caroline L. Hecker, ROSENBERG|MARTIN|GREENBERG, L.L.P., Baltimore, Maryland; Andrew D. Freeman, BROWN, GOLDSTEIN & LEVY, L.L.P., Baltimore, Maryland, for Appellant. George A. Nilson, City Solicitor, Justin S. Conroy, Assistant Solicitor, BALTIMORE CITY DEPARTMENT OF LAW, Baltimore, Maryland, for Appellee.

Unpublished opinions are not binding precedent in this circuit.

PER CURIAM:

Appellant, CDC-LCGH, LLC ("CDC"), sued the Mayor and City Council of Baltimore, Maryland ("City"), for breach of contract and other claims arising out of the expiration of a lease agreement on an historic City-owned building. CDC had hoped to extend the lease and renovate the building for use as its headquarters. However, CDC failed to obtain zoning approval for the proposed use of the property, and such approval was an express condition precedent to extension of the lease. The district court granted summary judgment to the City, and CDC appealed. For the reasons discussed below, we affirm.

I.

CDC is a Delaware limited liability company whose principal place of business is Delaware. CDC is engaged in the business of renovating, restoring, and preserving historic properties.

In 2001, CDC became interested in the Gatehouse, an eight-sided Gothic revival stone and tile-roof structure built in the 1880s and located in Baltimore's Lake Clifton Park. At the time, the building was dilapidated as a result of years of disuse. CDC began negotiations with the City to acquire and rehabilitate the Gatehouse for its use as CDC's headquarters. The City preferred a long-term lease to an outright sale.

On August 21, 2002, CDC and the City executed a written lease.[1] It provided for an "Initial Term" of three years "for the Lessee [CDC] to perform all necessary requirements for the review, design and structural 'Study' of the Leased Premises." JA at 62.[2] If CDC obtained certain required approvals, including "approval from the Board of Municipal and Zoning Appeals," and satisfied certain other conditions, including demonstrating adequate financing, the lease would extend for an additional forty-seven-year term. Id. If CDC failed to meet the various conditions, the lease would terminate.

The lease provided that, during the Initial Term, the property "shall be used solely for the review, design and structural 'Study' of the leased premises." JA at 61. Thereafter, if the lease were extended, the property "shall be used as office space by Lessee." JA at 62. The lease further provided that, upon termination,

> all alterations, additions or improvements made by either of the parties hereto upon the premises . . . shall be the property of the Lessor, and shall remain upon and be surrendered with the premises at the

---

[1]The lease was executed by Center Development Corporation, a Maryland corporation, and then assigned to CDC.

[2]Citations to "JA" are to the Joint Appendix submitted by the parties.

4

> termination of this Lease, without molestation or injury.

JA at 75.

CDC made improvements to the property during the Initial Term. In November 2003, for example, CDC applied for and received building permits to restore the Gatehouse. CDC installed approximately 650 feet of water and sewer lines and performed structural repairs. CDC asserts that it discussed this work with the City before, during, and after the time the improvements were made.

In 2004, CDC began to seek zoning approval from the Board of Municipal and Zoning Appeals ("Zoning Board"). Although the lease called for the property to be used "as office space by Lessee," CDC sought approval to use it as a "multi-purpose center." It did so because the Zoning Board informed it that this was the only permissible use under the applicable regulations. Nevertheless, the Zoning Board ultimately denied the application, however, because CDC's description of the project did not include the kinds of governmental or community activities required to qualify as a multi-purpose center as contemplated by the regulations. CDC did not seek judicial review of this decision in Maryland state courts.

On August 29, 2005, the City informed CDC that it believed the lease had terminated upon the expiration of the Initial Term

due to CDC's failures to demonstrate adequate funding and to obtain Zoning Board approval.

In August 2006, CDC brought an action against the City alleging, inter alia, breach of contract, unjust enrichment, and promissory estoppel.[3] The district court granted summary judgment to the City on all claims, and this appeal followed.

II.

We review a district court's grant of summary judgment de novo, taking all facts and permissible inferences in the light most favorable to the appellant. Castillo v. Emergency Med. Assoc., P.A., 372 F.3d 643, 646 (4th Cir. 2004). As a federal court sitting in diversity, we apply the substantive law of Maryland, the state in which the action arose. Id. We address CDC's arguments in turn.

A.

CDC claims the City breached its contract by terminating the lease at the end of the Initial Term. The district court held there was no breach because the lease expired by its own

---

[3]CDC also alleged fraud in the inducement, fraud by concealment, and negligent misrepresentation, but those claims have not been pursued on appeal.

terms when CDC failed to secure Zoning Board approval by the end of the Initial Term.  We agree.

The lease expressly provided, as a condition precedent to its extension, that "Lessee must acquire approval from the Board of Municipal and Zoning Appeals."  CDC does not dispute that it sought, but failed to acquire, approval by the Zoning Board to use the property as private office space.  CDC contended below that its failure to obtain the approval of the Zoning Board was excused because of impossibility of performance.  It argued, somewhat circularly, that because the proposed use for the Gatehouse was incompatible with applicable zoning, CDC ought to be "excused" from a lease provision that conditioned extension of the lease on CDC's obtaining the approval of the Zoning Board.

CDC's theory on appeal has evolved significantly.  It now argues that the lease never required it to obtain the Zoning Board's approval of the proposed use of the property.  CDC contends that the district court erred in "rewriting" the lease by construing the phrase "approval of the Board of Municipal and Zoning Appeals" as meaning Zoning Board approval "of the use" of the property.  See Appellant's Br. at 15-16.  CDC argues it was error for the district court to interpret the lease "in a manner that renders it impossible to perform."  Id. at 16.  Instead, CDC urges us to read the lease as requiring "[Zoning Board]

7

approval only to the extent such approval was necessary and within the [Zoning Board]'s authority to provide." Id. at 12. CDC suggests that "approval" in this context means approval for such matters as parking, signage, bulk dimensions, and lot coverage, but not for "use."

CDC's contract-interpretation theory was not advanced below,[4] and we generally do not consider new arguments raised for the first time on appeal. Muth v. United States, 1 F.3d 246, 250 (4th Cir. 1993). "Exceptions to this general rule are made only in very limited circumstances, such as where refusal to consider the newly-raised issue would be plain error or would result in a fundamental miscarriage of justice." Id. Such is clearly not the case here.

In any event, CDC's newly minted contention is without merit. "Maryland courts have long adhered to the principle of the objective interpretation of contracts." Wells v. Chevy Chase Bank, F.S.B., 363 Md. 232, 250-51 (2001). Under this approach, "where the language employed in a contract is

---

[4]Although CDC argued below that its failure to acquire Zoning Board approval was excused because of impossibility of performance, that is a different argument from the one advanced here. CDC's initial argument was that a failure to obtain the Zoning Board's approval of the proposed use of the building, even if it were required, was nevertheless excused. CDC's present assertion is that the lease should be interpreted as having never included such a condition.

8

unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court." Id. That is, "[t]he words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed." Id. at 251. And, although Maryland "courts will prefer a construction which will make the contract effective rather than one which will make it illusory or unenforceable," that canon of construction applies only when a provision is ambiguous. Cadem v. Nanna, 243 Md. 536, 544 (1966) ("Inasmuch as the provision is clear and unambiguous[,] resort to the rules of construction . . . need not be had.").

There is no ambiguity here. The text of the lease provided, as a condition precedent to its extension beyond the Initial Term, that the "Lessee must acquire approval from the Board of Municipal and Zoning Appeals." The most natural reading of this provision is that it requires Zoning Board approval of the object of the lease: renovation of the Gatehouse by CDC for use as office space. While the language might be read as also requiring Zoning Board approval for things like signage and parking, it would make little sense to interpret the text of the provision as referring to such collateral matters while not referring as well to the proposed use of the property. CDC offers no support for such a novel construction.

9

Further, the fact remains that CDC did seek approval of the Zoning Board for the proposed use and was unable to acquire it. Given the text of the lease and the undisputed fact that the Zoning Board denied CDC's application, the only reasonable interpretation is that CDC failed to satisfy the express condition that the "Lessee acquire the approval of the Board of Municipal and Zoning Appeals." Because a condition precedent to extension of the lease was not satisfied, the lease expired by its own terms at the end of the three-year Initial Term.[5]

B.

CDC also appeals the district court's grant of summary judgment to the City on CDC's claims of unjust enrichment and promissory estoppel. In this regard, CDC argues that the City was unjustly enriched by the value of improvements CDC made to the Gatehouse property before the lease terminated and that CDC relied to its detriment on "promises" by the City regarding the

---

[5]In further support of its argument that the lease should be construed as not requiring Zoning Board approval of the building's proposed use, CDC also contends (1) that the City's Department of Recreation and Parks, and not the Zoning Board, had authority to approve of the property's use, and (2) that interpretation of the lease is subject to the rule that contracts be construed against the party that prepared them. Because we find no ambiguity in the text of the lease regarding the Zoning Board's authority, we need not reach these points.

permissibility of use of the Gatehouse as offices and CDC's satisfaction of certain lease-extension conditions.

These claims are alternatives to the breach-of-contract claim because in Maryland, as elsewhere, "[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests." County Comm'rs v. J. Roland Dashiell & Sons, Inc., 358 Md. 83, 96 (2000); see also Ver Brycke v. Ver Brycke, 379 Md. 669, 693 n.9 (2004) ("We observe that the Ver Bryckes' unjust enrichment and promissory estoppel claims, which are quasi-contract claims, would have been untenable had they argued that a contract had existed between them.").

CDC generally acknowledges that, if the lease was valid, its quasi-contractual claims fail.[6] Thus, CDC argues that the lease was invalid to the extent it required Zoning Board approval of the proposed use of the property. See Konig v. Mayor and City Council of Baltimore, 128 Md. 465, 465 (1916)

---

[6]CDC's only argument to the contrary is that the unjust enrichment claim survives because a "Cancellation Clause" in the lease provided for reimbursements by the City of certain costs if the City terminated the lease early. That provision does not apply here because, as discussed, the City did not terminate the lease early.

11

(allowing a claim in quasi-contract where an express contract was held invalid).

CDC fails, however, to demonstrate that the lease here is invalid.  At best, CDC argues the Zoning Board's approval was impossible to obtain, either because the use required by the lease was incompatible with applicable zoning or because the Zoning Board did not actually have the authority to approve of the use of the property.[7]  Although impossibility may excuse a failure to perform a particular contractual obligation in some circumstances, see, e.g., Acme Moving and Storage Corp. v. Bower, 269 Md. 478, 483 (1973), CDC has failed to cite any Maryland authority for the proposition that mere impossibility of a condition precedent can invalidate a contract ab initio.

Even assuming, arguendo, that it could, CDC's case for impossibility falls short.  Impossibility provides an excuse only when the risk of impossibility was not assumed by the promisor and was not foreseeable at the time of contracting.

---

[7]Although CDC asserts in this litigation that the Zoning Board lacked authority to approve of the use of the property because that authority resided in the Department of Recreation and Parks, CDC nevertheless did seek the Zoning Board's approval of its proposed use of the property, and the Zoning Board rendered a decision on the merits.  The record indicates that CDC did not challenge the jurisdiction or authority of the Zoning Board to render its decision, nor did it appeal the decision in Maryland state courts, as it could have.  See Md. Code. Art. 66B, § 2.09.

<u>Acme</u>, 269 Md. at 483. This makes sense: contracting parties regularly manage uncertainties by allocating the risks between them, and courts should avoid upsetting bargained-for expectations. Here, the language and structure of the lease readily inform the conclusion that CDC assumed the risk that Zoning Board approval might not be obtainable. The lease provided for two separate terms. The Initial Term of three years was "for the Lessee to perform all necessary requirements for the review, design and structural 'Study' of the Leased Premises." Thereafter, if (and only if) CDC were able to meet all of several express conditions would the lease extend for an additional forty-seven year term. The lease term was bifurcated to account for the possibility that one or more of the conditions could not be satisfied. The responsibility to satisfy each and every condition was assigned to CDC. The risk of failure to obtain Zoning Board approval could scarcely have been more clearly allocated to CDC.

Therefore, because CDC assumed the risk that Zoning Board approval might not be obtainable, it is unable to claim that the impossibility of obtaining that approval rendered the lease invalid. Moreover, because the lease is valid, it precludes CDC's quasi-contractual claims for unjust enrichment and promissory estoppel. <u>County Comm'rs</u>, 358 Md. at 96.

III.

For the foregoing reasons, the judgment of the district court is

AFFIRMED.