ROBERT FRANCIS HANSON ET AL. V.
HARRY R. HUGHES ET AL.

[No. 1702, September Term, 1981.]

*Decided July 15, 1982.*

The cause was argued before WILNER, MACDANIEL and WEANT, JJ.

*Isaac S. Kershner, Assistant Public Defender,* with whom was *Alan H. Murrell, Public Defender of Maryland* on the brief, for appellants.

*George A. Eichhorn, III, Assistant Attorney General,* with whom was *Stephen H. Sachs, Attorney General of Maryland,* on the brief, for appellees.

, WILNER, J., delivered the opinion of the Court.

Md. Code art. 41, § 122 (a) makes it the duty of the Maryland Parole Commission to request its administrative arm, the Division of Parole and Probation, "to make such investigation as may enable the Commission to determine the advisability of granting parole to persons sentenced to a term of 90 days or more under the laws of this State . . . whenever the prisoner shall have served in confinement one fourth of the term or consecutive terms."

Section 122 (b) of art. 41, however, provides that:

"No person who has been sentenced to life imprisonment shall be eligible for parole consideration until he shall have served fifteen years or the equal of fifteen years when considering [pretrial detention and statutory credits against the sentence for good behavior and participation in approved work and educational programs]. Prisoners serving terms of life imprisonment shall only be paroled with the approval of the Governor."

Facially, these two subsections are not inconsistent. They create two categories of prisoners for purposes of parole — those sentenced to life imprisonment, and all others sentenced to a term of ninety days or more. The former must serve the statutory equivalent of fifteen years before becoming eligible for parole consideration, and even then

they may actually be paroled only with the approval of the Governor. The latter — all others — are eligible for parole consideration at any time, and they *must* be considered after serving one-quarter of their sentence. They need not, of course, actually be paroled at that time (or at any time); but the Division of Parole and Probation must at least investigate their qualification for parole.[1]

The problem arises when the sentencing court imposes a life sentence but, acting pursuant to its authority under Md. Code art. 27, § 641A (a), suspends execution of all of it save a fixed number of years.[2] When, in that circumstance, is the prisoner entitled to be considered for parole — when one-quarter of the unsuspended term has been served or not until the expiration of fifteen years (or its statutory equivalent)?

The issue comes before us through a petition for declaratory judgment filed in the Superior Court of Baltimore City by three Division of Correction inmates serving "partially suspended life sentences," on behalf of themselves and a class of like inmates.[3] One inmate (Hanson) received two

---

1. This requirement has been implemented by regulations of the Parole Commission. *See, in particular,* COMAR 12.08.01.17A (1): "All prisoners sentenced to a term of 6 months or more shall receive a parole hearing after serving not more than one-fourth of their sentence, or in the case of multiple sentences, one-fourth of their total combined sentences." *Compare* COMAR 12.08.01.17A (3) dealing with prisoners under life sentence.

2. Section 641A (a) provides in relevant part:

"Upon entering a judgment of conviction, the court having jurisdiction may suspend the imposition or execution of sentence and place the defendant on probation upon such terms and conditions as the court deems proper. The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation for a period longer than the sentence but not in excess of five years, however, if the defendant consents in writing, the court may grant probation in excess of 5 years, but only for purposes of making restitution."

In *State v. Wooten,* 277 Md. 114 (1976), the Court of Appeals held that the authority in § 641A (a) to suspend the execution of all or part of a sentence extended to mandatory life sentences, such as under art. 27, § 413 (first degree murder), and that a court could, therefore, impose a life sentence and suspend the serving of all but the first eight (or other number of) years.

3. In a sad commentary on the state of our society, the petition avers that "[t]he members of the class are so numerous that joinder of all members is impossible or impracticable."

concurrent life terms for murder, with all but fifteen years suspended on each; a second (Thomas) received a life sentence with all but eleven and one-half years suspended; the third (Bell) received a life sentence with all but twenty-seven years suspended (together with a twenty-five year concurrent sentence). They contend that, pursuant to art. 41, § 122 (a), they are entitled to parole consideration after serving one-quarter of the unsuspended term of years (fifteen, eleven and a-half, and twenty-seven respectively), but that, upon the authority of an Opinion of the Attorney General (61 Op. Att'y Gen. 322 (1976)), the Parole Commission considers them subject to the constraints of § 122 (b) and declines to consider them for parole prior to the expiration of fifteen years (or its statutory equivalent).

The inmates argue that § 122 (b) is inapplicable to them and the members of their class, that the Attorney General's Opinion and the policy of the Parole Commission adopted pursuant to it are wrong, and that the Commission by reason of its policy has unlawfully discriminated against them in contravention of the "equal protection" clause of the Fourteenth Amendment to the United States Constitution and art. 23 of the Maryland Declaration of Rights. They asked for a declaratory judgment that the application of § 122 (b) to prisoners serving partially suspended life sentences is illegal, that the aforementioned opinion of the Attorney General is "invalid, null and void," and that the Parole Commission "shall apply forthwith the parole provisions of [§ 122 (a)] to the . . . plaintiffs."

The Attorney General, on behalf of the Parole Commission and the other defendants,[4] answered the petition, contesting the inmates' underlying legal premise and asking that the relief prayed be denied. After considering certified docket entries evidencing the status of the three named petitioners and arguments of counsel, the court, on November 17, 1981, entered a declaratory judgment that § 122 (b) *was*

---

4. Named as defendants, in addition to the members of the Parole Commission, were the Governor and the Secretary of Public Safety and Correctional Services.

applicable to the petitioners, and that, as a result, they were not eligible for parole consideration until they served the minimum time required thereby. This appeal ensued.

### (1) *Procedural Prelude*

As noted, this proceeding was filed as a class action pursuant to Maryland Rule 209. The State has raised no objection to that procedure, and we see nothing in the record before us to suggest that it is inappropriate. We mention this only because, from the record before us, it appears that two of the named petitioners (Hanson and Bell) may not have been entitled to mandatory parole consideration at the time the petition was filed (July 29, 1981) even under § 122 (a), and thus, as to them, there may have been no justiciable controversy at that time.[5] As the record indicates that Thomas would have been eligible for mandatory review under § 122 (a), however, and given the lack of apparent impropriety with the class action procedure, we shall address the merits of the controversy upon the premise that

---

5. The record with respect to Hanson is unclear. It shows that on March 23, 1978, he received a sentence of life imprisonment "except for 15 years" plus two concurrent five-year terms. On August 18, 1978, the sentence was revised, apparently to make clear that the main sentence was life with all but fifteen years suspended. The record does not indicate whether Hanson received credit for pretrial detention or what, if any, statutory credits he had earned prior to the July 29, 1981, petition. Absent such credits, he would not have served a quarter of the unsuspended fifteen-year term until December, 1981 (three years, nine months from March 23, 1978).

As to Bell, the record shows that on March 21, 1980, she received a sentence under count four of life imprisonment with all but twenty-seven years suspended, to run concurrently with a five-year sentence under the third count. She also received a twenty-year sentence under count five, to run *consecutively* to the five years under count three. As to all the sentences, she was given 209 days credit for time already served. Once again, the record does not indicate what, if any, statutory credits were earned by Bell prior to the July 29, 1981, petition. Given the twenty-seven year unsuspended term, dating from August, 1979, it seems apparent that even if § 122 (a) were applicable to her in lieu of § 122 (b), she would not have been entitled to mandatory parole consideration until sometime in 1985 or later.

Thomas's sentence read as follows: imprisonment for life; "further ordered that eleven and one-half (11½) years from 1/1/77 be served in confinement, the remainder of the sentence is suspended and probation is granted for a period of five (5) years with minimal supervision." He would have served one-quarter of the unsuspended period during 1979.

the issue raised by Thomas and other inmates in *his* class is presently justiciable and thus properly before us.

### (2) *Statutory Construction*

Section 122 (b) contains two different limitations with respect to life prisoners. The first sentence, as noted, states that no person "who has been sentenced to life imprisonment" is eligible for parole consideration until he serves the statutory equivalent of fifteen years. The second sentence states that prisoners "serving terms of life imprisonment" may only be paroled with gubernatorial consent.

This appeal involves only the first provision. The thrust of appellants' argument before the trial court concerned only the fifteen-year requirement and that is all the court's declaration addressed. The second provision was neither considered nor decided by the trial court, and therefore is not properly before us. Maryland Rule 1085.

The controlling guidelines for statutory construction are fairly clear. As stated in *Koyce v. State of Maryland, Central Collection Unit,* 289 Md. 134, 140 (1980), "we strive to ascertain and effectuate the real intention of the Legislature." To do that, we look first to the language of the statute itself. "When the language is plain and unambiguous, there is no need to look beyond the language itself, which should be given effect in accordance with the plain meaning of the words." *Id.,* 140. If there is some doubt or ambiguity in the statutory language, a number of extrinsic aids are available in order to discern the true legislative intent, one of which is to consider the legislative history of the enactment in question. *See Welsh v. Kuntz,* 196 Md. 86, 93 (1950).

In one of the minor parodoxes of this case, both sides look at § 122 (b), immediately reach diametrically opposite interpretations of what it means, and argue nevertheless that there is no ambiguity in the language.

The inmates argue that the phrase "sentenced to life imprisonment" necessarily refers to the unsuspended part of

the life sentence and not to the totality of the sentence actually imposed by the court. To construe the language otherwise, they say, would conflict with and effectively restrict the court's authority under § 641A of art. 27 to impose a "split sentence," [6] and would serve to defeat the parole system. They point out that the effect of applying § 122 (b) where the unsuspended term is fifteen years or less is to deny the prisoner all opportunity for parole, thus requiring him to serve in confinement the full unsuspended period. Inmates such as Bell, whose unsuspended term exceeds fifteen years, would not become eligible for parole until long after one-quarter of the unsuspended term has been served. This, they claim, is unfair and unreasonable when compared with inmates having flat sentences for an equivalent number of years.

The State responds that that distinction was an intentional (and a permissible) one — that "lifers" were meant to be treated differently and may properly be so treated. It argues that the 1976 opinion of the Attorney General is correct, and that by failing to amend § 122 (b) since 1976, the Legislature has acquiesced in the Attorney General's interpretation.

We do not find the "legislative acquiescence" argument to be particularly persuasive in the context of this case, but we do believe that the State's construction of the statute is the proper one. It is a construction compelled by a logical and literal reading of § 122 (b) *in pari materia* with § 641A of art. 27.

Section 641A confirms what had previously been judicially determined — that there is a distinction between suspending the initial *imposition* of a sentence and suspending *execution* of a sentence already (or contemporaneously) imposed. *See Knight v. State,* 7 Md. App. 313 (1969), *and cf. State ex rel. Sonner v. Shearin,* 272 Md. 502, 506, n. 2 (1974); *Skinker v. State,* 239 Md. 234 (1965). *See also Municipal*

---

**6.** Each of the appellant inmates has received what is sometimes referred to as a "split sentence." Such a sentence is defined in the Parole Commission regulations (COMAR 12.08.01.17A (4) (b)) as one "for a term diminished by the suspension of a portion of it by the sentencing court."

*Court of Toledo v. State ex rel. Platter,* 184 N.E. 1 (Ohio 1933).

The first sentence of § 641A authorizes a court, upon entering a judgment of conviction, to "suspend the *imposition or execution* of sentence and place the defendant on probation. . . ." (Emphasis supplied.) In context, that provision necessarily refers to a suspension of the *entire* sentence; either a sentence is not imposed at all or, if it is, execution is suspended in its entirety in lieu of probation.

The second sentence of § 641A is what authorizes the "split sentence," and it is worded quite differently. It says nothing about partially suspending *imposition* of a sentence. Rather, it provides that "[t]he court *may impose a sentence for a specified period* and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation. . . ." (Emphasis supplied.)

The clear import of this is that the power of *partial* suspension relates only to suspension of execution. The court must impose the full sentence; it may then suspend execution of a part of it. The effect of such a partial suspension is as stated in *Picklesimer v. State,* 176 S.E.2d 536, 538 (S.C. 1970) — that: "When a portion of a sentence is suspended it merely means that a person is permitted to serve a portion of his sentence at home. The sentence is the total of the part served at the prison and at home." *See also State v. Germany,* 57 S.E.2d 165 (S.C. 1949).

It follows, then, that where the sentence imposed was life imprisonment, notwithstanding that execution of a part of that sentence has been suspended under the second sentence of § 641A, for purposes of § 122 (b), the inmate "has been sentenced to life imprisonment" and not merely to the unsuspended part of it which he must serve in confinement. *See, again, Picklesimer v. State, supra; also Mims v. State,* 259 S.E.2d 602 (S.C. 1979).

We do not regard such a construction as in any way restricting the authority of the courts to act under § 641A. Indeed, that question was put to rest in *State v. Wooten, supra,* 277 Md. 114. The Court there observed that § 122 (b)

was directed at the Executive branch of the State government, whereas § 641A was directed at the judiciary. It concluded:

> "It is simply not illogical to suppose that both of these provisions may govern sentences issued pursuant to § 413 [mandatory life sentence for non-capital first degree murder]. Further, the fact that the Legislature sought to limit the executive branch's power to parole criminals with life sentences does not mean it intended similarly to attenuate the discretion it granted the judicial branch to suspend sentences." *Id.* at 119.

*See also Williamson v. State,* 284 Md. 212 (1979).

There is no inconsistency between the two provisions. In considering whether to suspend any part of a life sentence — particularly a mandatory life sentence — a court likely will take into account the provisions of § 122 (b), and may decide to grant the partial suspension only upon the premise that the defendant will in fact be confined for the full unsuspended term, up to fifteen years. To that extent, when the aggregate sentence imposed is life imprisonment, the "split sentence" will, as appellants complain, serve to preclude early parole consideration; but that is a preclusion clearly authorized by the Legislature, and we can find no fault with it.[7] As we stated in *Dennis v. Warden,* 12 Md. App. 512, 514 (1971): "[T]here is no constitutional right to be paroled, and we see no equal protection denial in a statute which requires persons sentenced to life imprisonment to

---

[7]. Because we believe that § 122 (b) is clear and unambiguous, and may properly be read *in pari materia* with § 122 (a) and with § 641A, there is no need to relate the long, but interesting, legislative history of its dual provisions. Suffice to say that such history fully supports the conclusion that we reach — that at least since 1953, the Legislature has manifested an intent to treat persons under life sentences differently from other inmates with regard to consideration for parole.

serve fifteen years of that sentence before becoming eligible
for parole. . . ."

*Judgment affirmed; appellants to
pay the costs.*