586 A.2d 3

Jan FEICK

v.

**Dougald Gerel THRUTCHLEY.**

**No. 56, Sept. Term, 1990.**

Court of Appeals of Maryland.

Feb. 25, 1991.

Karen H. Abrams, Leonardtown, for appellant.

Daniel J. Guenther, Leonardtown, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, RODOWSKY, McAULIFFE, CHASANOW and KARWACKI, JJ., and CHARLES E. ORTH, Jr., Judge of the Court of Appeals (retired), Specially Assigned.

KARWACKI, Judge.

Jan Feick (wife) and Dougald Gerel Thrutchley (husband) were divorced by the Family Court of the First Circuit of the State of Hawaii on June 27, 1980. The decree of that court approved and incorporated by reference the Agreement in Contemplation of Divorce (property settlement agreement) which the parties had entered one month earlier. Paragraph 11 of that property settlement agreement which we are asked to construe states:

MILITARY RETIREMENT. The [wife] shall receive as and for division of property a portion of each military retirement payment made to [husband]. Her portion of each retirement payment shall be "X" in the following formula, in which "y" is the number of years [husband] served in the military service prior to retirement, "z" is the number of years of the marriage of the parties, which for purposes of computing [wife's] share of military retirement the parties agree shall be 14.0, and "R" equals the gross amount of the payment to be apportioned. Gross amount means the amount of the payment to which [husband] is entitled before any deductions for taxes or otherwise.

$$X = \frac{1}{2} [z/y] [R]$$

[Husband] shall cause [wife's] portion to be paid directly to her, or if direct payment is not possible, he shall pay her her portion immediately upon his receipt of the payment. Whenever the government provides [husband] with documentary information on an accounting concerning said retirement pay, he shall immediately provide [wife] with a copy. It is intended that [husband] shall be taxed on his share of each payment, and [wife] shall be taxed on her share. The Court reserves jurisdiction to make an appropriate adjustment should it unexpectedly result that [husband] is held taxable on [wife's] share of the retirement.

For the purposes of this section, payments received by [husband] following his retirement from the military on account of disability shall constitute "military retirement payments."

At the time of the divorce, husband was on active duty as an enlisted man in the United States Navy. On July 1, 1988, after more than 21 years of active duty service, he transferred to the Navy Fleet Reserve and returned to civilian life. At the time of the trial of this case, he was receiving $946.00 per month as "retainer pay" from the Navy and was pursuing a full time civilian occupation as a project engineer.

When wife learned that husband had ceased active duty with the Navy, she communicated with appropriate officials of the Navy in an attempt to obtain a share of husband's "retainer pay" to which she believed she was entitled under the property settlement agreement they had entered at the time of the divorce. She was advised that she could not receive any part of that payment until the precise portion due her was established by court order. Thereafter, she filed in the Circuit Court for St. Mary's County a Complaint to Establish Retirement Allotment. Husband defended the suit, claiming that the retainer pay which he was receiving from the Navy was not a "military retirement payment" within the meaning of their property settlement agreement.

At trial neither party offered extrinsic evidence explaining their use of the phrase "military retirement payment" in their property settlement agreement. The trial court ruled that husband's "retainer pay" did not qualify as such and entered judgment in favor of husband. Wife appealed to the Court of Special Appeals, and we issued a writ of certiorari on our own motion before the case was considered by the intermediate appellate court.

The question of interpretation presented in the instant case is one for the Court. As we explained in *Goldberg v. Goldberg*, 290 Md. 204, 212, 428 A.2d 469, 474–75 (1981):

> Property settlement agreements, as all other contracts scrutinized under the law of this State, are subject to interpretation in light of the settled and oft-repeated principles of objective construction. *Orkin v. Jacobson*, 274 Md. 124, 128, 332 A.2d 901, 903 (1975). "The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding ..." *Slice v. Carozza Prop, Inc.*, 215 Md. 357, 368, 137 A.2d 687, 693 (1958). "[W]here a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed." *Kasten Constr. v. Rod Enterprises*, 268 Md. 318, 328, 301 A.2d 12, 18 (1973); *Little v. First Federated Life*, 267 Md. 1, 6, 296 A.2d 372, 375 (1972); *Devereux v. Berger*, 253 Md. 264, 269, 252 A.2d 469, 471 (1969). Thus, when interpreting a separation agreement, this Court is "bound to give effect to the plain meaning of the language used." *Woodham v. Woodham, supra* [235 Md. 356] at 360, 201 A.2d [674] at 676 [1964]; *Sands v. Sands*, 252 Md. 137, 249 A.2d 187 (1969).

*See also Bruce v. Dyer*, 309 Md. 421, 433, 524 A.2d 777, 783 (1987). Moreover, we accord the words used by the parties their usual, ordinary and accepted meaning unless there is

evidence that they intended to employ the language in a special or technical sense. *Cheney v. Bell National Life*, 315 Md. 761, 766, 556 A.2d 1135, 1138 (1989). In sum, we shall interpret husband's promise to share his military retirement payments with wife by the objective test of what his promise would be understood to mean by a reasonable person. *GMAC v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985); *Aetna Casualty & Surety Company v. Insurance Commissioner*, 293 Md. 409, 420, 445 A.2d 14, 19 (1982); *Anne Arundel County v. Crofton Corp.*, 286 Md. 666, 673, 410 A.2d 228, 232 (1980).

In the case *sub judice*, the trial court based its interpretation of the phrase "military retirement payment" as used in paragraph 11 of the parties' separation agreement on the technical distinction between "retainer pay" and "retirement pay" provided for enlisted personnel of the Navy. Therefore, we shall begin our analysis with an examination of the federal statutes which govern those benefits.

Any enlisted member of the regular Navy or Naval Reserve who has completed 20 or more years of active duty has the option of transferring to the Fleet Reserve. 10 U.S.C. § 6330(b) (1988). A member of the Fleet Reserve receives retainer pay which is based upon the number of years served on active duty. 10 U.S.C. § 6330(c). Fleet Reservists may be recalled to active duty in the event of war or national emergency, 10 U.S.C. § 6485(a), and may be required to return to active duty for no more than two months in each four year period for training. 10 U.S.C. § 6485(b). When recalled to active duty, a member of the Fleet Reserve receives the regular pay of an enlisted person in his or her rank and length of service, 37 U.S.C. § 204; retainer pay is discontinued during those recalls for active duty. 10 U.S.C. § 6330(c). When the number of years served on active duty and as a member of the Fleet Reserve totals 30, the enlisted person is then transferred to the retired list of the Regular Navy or Navy Reserve and begins receiving retired pay in the same amount as the retainer pay to which he or she was then entitled. 10

U.S.C. § 6331(c). Thus, under this statutory scheme, the benefit to which the enlisted person is entitled as either retainer pay or retirement pay is solely determined by the time he or she has served on active duty in the Navy. There are comparable provisions governing benefits for enlisted personnel in the Army (10 U.S.C. 3914 *et seq.*), Air Force (10 U.S.C. 8914 *et seq.*), and Marines (10 U.S.C. 6330 *et seq.*).

■ We believe the trial court erred in attributing to the parties the intention to limit "military retirement pay" as employed in paragraph 11 of their property settlement agreement to the benefits which would be received by husband when he completed 30 years of combined service on active duty and as a member of the Fleet Reserve. Rather, we believe that a reasonable person under these circumstances could properly rely on the common knowledge that members of the armed forces are entitled to retire after 20 years of active duty. Whether the benefit be called retainer pay or retirement pay, the recipient who has served his or her country for 20 years then receives deferred compensation for that *active duty service* when resuming civilian pursuits.

Although there is a dearth of authority on the issue, we believe the better reasoned opinions by the courts of our sister states support our conclusion. *In Re Marriage of Lawson*, 409 N.W.2d 181 (Iowa, 1987); *In Re Marriage of Mercier*, 48 Cal.App.3d 775, 121 Cal.Rptr. 886 (1975). The Supreme Court of Iowa in *Lawson* construed a property settlement agreement executed at the time of the parties' divorce which provided that wife would be entitled to a portion of the benefits husband received "upon his retirement from the U.S. Navy." The Iowa Court held that husband's transfer to the Fleet Reserve after 20 years of active duty constituted "retirement from the U.S. Navy." In *Mercier*, the California intermediate appellate court held that retainer pay received by the husband as a member of the Fleet Reserve was deferred compensation for his active duty in the Navy, and since a portion of that active duty

was performed while married, the retainer pay was community property in which his wife was entitled to share upon their divorce. The Court of Civil Appeals of Texas in *Sprott v. Sprott,* 576 S.W.2d 653 (1978), took a contrary view, holding that retainer pay received by a Fleet Reservist was not community property in which wife was entitled to share at the time of their divorce.

For the reasons expressed, we shall reverse the judgment below and remand this case for entry of an order in conformance with our opinion.

JUDGMENT REVERSED, CASE REMANDED TO THE CIRCUIT COURT FOR ST. MARY'S COUNTY FOR FURTHER PROCEEDINGS. COSTS TO BE PAID BY APPELLEE.