787 A.2d 815

**William Dale RIDENOUR, Jr.**

v.

**STATE of Maryland.**

**No. 1838, Sept.Term, 2000.**

Court of Special Appeals of Maryland.

Dec. 31, 2001.

2

Thomas M. Donnelly (Byron L. Warnken and Law Offices of Bonnie L. Warnken, on brief), Baltimore, for appellant.

Annabelle L. Lisic, Asst. Atty. Gen. (J. Joseph Curran, Jr., Atty. Gen., both of Baltimore and Christian Jensen, State's Atty. for Caroline County, Denton, on brief), for appellee.

Argued before SALMON, DEBORAH S. EYLER, and THEODORE G. BLOOM (Ret'd, Specially Assigned), JJ.

DEBORAH S. EYLER, Judge.

In the Circuit Court for Caroline County, William Dale Ridenour, Jr., the appellant, was charged with first degree burglary, several lesser included burglary offenses, and theft over $300. He pled guilty to first degree burglary pursuant to a negotiated plea agreement; as part of that agreement, the State *nolle prossed* the remaining charges. On August 28, 2000, the appellant was sentenced to a 15–year term, eight years of which were to be served and seven years of which were to be suspended in favor of five years' supervised probation.

The appellant filed an application for leave to appeal, which was granted. He presents three questions for review. We have adopted the State's reworded and combined restatement of those questions:

I. Did the trial court properly sentence the appellant consistent with the terms of the plea agreement?

II. Did the trial court impose sentence based on impermissible considerations? [1]

---

1. As worded by the appellant, the questions presented were:
 1. Whether the trial court erred, as a matter of law, when it breached the binding, written plea agreement that Appellant Ridenour and the State entered into whereby Appellant Ridenour would be sentenced within the sentencing guideline range, which

For the following reasons, we answer "yes" to both questions. Accordingly, we shall vacate the sentence imposed by the circuit court and remand the case for a new sentencing hearing, by a different judge. We shall recite the pertinent facts in our discussion of the issues.

## DISCUSSION

### I.

On June 7, 2000, the appellant and the State entered into a written "Plea Agreement" in which the appellant agreed to plead guilty to first degree burglary and the State agreed to *nolle pros* the remaining charges. Paragraph 9 of the Plea Agreement provides, in pertinent part:

> The sentence disposition and/or other judicial action will be: The court will bind itself to a split sentence with initial time to serve not to exceed sentencing guideline range, with the balance of the sentence suspended in favor of supervised probation. . . .

The guideline range was two to eight years. On August 28, 2000, the appellant was sentenced by a circuit court judge (now retired) to a total of 15 years, eight of which were suspended in favor of five years' probation.

The appellant contends that the Plea Agreement was a binding agreement, under Md. Rule 4–243(a)(6), which the court accepted, but the court then failed to impose a sentence

---

was agreed to be two to eight years, and instead, the trial court sentenced Appellant Ridenour to 15 years, executing upon eight years and suspending seven years.

2. Whether the trial court violated Maryland Rule 4–243(c), by failing to inform Appellant Ridenour that the trial court rejected the plea agreement and failing to afford him the opportunity to withdraw his plea and to go before a different judge.

3. Whether the trial court erred when it considered, during sentencing, (A) Appellant Ridenour's exercise of his Fifth Amendment privilege against compelled self-incrimination during the investigation, arrest, and detention phase, prior to his guilty plea, and (B) Appellant Ridenour's exercise of his First Amendment rights under the free exercise clause [sic] and the establishment clause [sic] of the United States Constitution.

in accordance with the terms of the Plea Agreement. Specifically, he argues that, when read in light of Md. Code (1957, 1996 Repl. Vol., 2001 Supp.), Art. 27, § 641A(a), which authorizes split sentences, and the cases interpreting that statute, the Plea Agreement called for a maximum total sentence of two to eight years, part of which would be suspended. Therefore, the 15-year sentence imposed by the trial court was not in accordance with the Plea Agreement.[2]

 The State agrees that the Plea Agreement was binding and was accepted by the court, but disagrees that the sentence imposed by the court did not comport with its terms. The State argues that the phrase "initial time to serve" in the Plea Agreement meant the time that the appellant would serve in prison, *i.e.*, the executed portion of the sentence. Thus, the agreement was that the appellant would be sentenced to no less than two and no more than eight years of prison time. There was no agreement, however, about the length of the balance of the sentence—that is, the suspended portion—except, of course, that it could not be for a number of years that when added to the "initial time to serve" would exceed the 20-year statutory maximum penalty for first degree burglary. We agree with the State.

 A plea agreement is a contract between the defendant and the State. *Ogonowski v. State*, 87 Md.App. 173, 182–83, 589 A.2d 513, *cert. denied*, 323 Md. 474, 593 A.2d 1127 (1991). In determining the meaning of a plea agreement, we apply the principles of contract interpretation. Recently, the Court of Appeals, in *Wells v. Chevy Chase Bank, F.S.B.*, 363 Md. 232, 250, 768 A.2d 620 (2001), summarized those principles as follows:

In determining the meaning of contractual language, Maryland courts have long adhered to the principle of the objec-

---

2. Alternatively, the appellant argues that the trial court implicitly rejected the Plea Agreement but did not inform him of that fact. Because the State agrees that the trial court accepted the Plea Agreement, and it is plain from the record that the court did so, we shall not address that argument.

tive interpretation of contracts. [*Auction and Estate Representatives, Inc. v.*] *Ashton*, 354 Md. [333,] 340, 731 A.2d 441 [(1999)]; *Calomiris* [*v. Woods*,] 353 Md. 425, 435, 727 A.2d 358 (1999); *Adloo v. H.T. Brown Real Estate, Inc.*, 344 Md. 254, 266, 686 A.2d 298 (1996); *Maryland v. Attman/Glazer P.B. Co.*, 323 Md. 592, 604, 594 A.2d 138 (1991); *Cloverland Farms Dairy, Inc. v. Fry*, 322 Md. 367, 373, 587 A.2d 527, (1991); *Feick v. Thrutchley*, 322 Md. 111, 114, 586 A.2d 3 (1991); *Aetna Cas. & Sur. Co. v. Insurance Comm'r*, 293 Md. 409, 420, 445 A.2d 14 (1982). Under the objective interpretation principle, where the language employed in a contract is unambiguous, a court shall give effect to its plain meaning and there is no need for further construction by the court. *Ashton*, 354 Md. at 340, 731 A.2d 441; [*JBG/Twinbrook Metro Ltd. Pshp. v.*] *Wheeler*, 346 Md. 601, 625, 697 A.2d 898 (1997); *Insurance Comm'r*, 293 Md. at 420, 445 A.2d 14. "If a written contract is susceptible of a clear, unambiguous and definite understanding ... its construction is for the court to determine." *Rothman v. Silver*, 245 Md. 292, 296, 226 A.2d 308 (1967).

Further, "the clear and unambiguous language of an agreement will not give way to what the parties thought the agreement meant or was intended to mean." *Ashton*, 354 Md. at 340, 731 A.2d 441 (citing *Adloo*, 344 Md. at 266, 686 A.2d 298; *General Motors Acceptance Corp. v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306 (1985); *Board of Trustees v. Sherman*, 280 Md. 373, 380, 373 A.2d 626, (1977)). See also *Beckenheimer's Inc. v. Alameda Assocs. Ltd. Partnership*, 327 Md. 536, 611 A.2d 105 (1992)("A party's intention will be held to be what a reasonable person in the position of the other party would conclude the manifestations to mean"). The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed. *Kasten Constr. Co. v. Rod Enters., Inc.*, 268 Md. 318, 329, 301 A.2d 12 (1973); *Liller v. Logsdon*, 261 Md. 367, 370, 275 A.2d 469 (1971); *Belmont Clothes, Inc. v. Pleet*, 229 Md. 462, 467, 184 A.2d 731, (1962);

*ST Sys. Corp. v. Maryland Nat'l Bank,* 112 Md.App. 20, 34, 684 A.2d 32 (1996).

As we have stated, the appellant maintains that the meaning of the phrase "initial time to serve" in the Plea Agreement must be determined by reference to § 641A, and cases decided thereunder. Section 641A(a)(3) authorizes "split sentences" by providing: "The court may impose a sentence for a specified period and provide that a lesser period be served in confinement, suspend the remainder of the sentence and grant probation...." The appellant points out that in *Hanson v. Hughes,* 52 Md.App. 246, 447 A.2d 892 (1982), this Court explained with respect to section 641A(a)(3):

The clear import of this is that the power of partial suspension relates only to suspension of execution. The court must impose the full sentence; it may then suspend execution of a part of it. The effect of such a partial suspension is ... that: "When a portion of a sentence is suspended it merely means that a person is permitted to serve a portion of his sentence at home. The sentence is the total of the part served at the prison and at home."

*Id.* at 253, 447 A.2d 892 (quoting *Picklesimer v. State,* 254 S.C. 596, 176 S.E.2d 536, 538 (1970)).

■ To be sure, section 641A(a)(3) and the excerpt from *Hanson v. Hughes* quoted above make plain that a split sentence is one in which the court imposes a total sentence and suspends the execution of a part of it. In other words, a lesser suspended period of years is carved out of the total sentence and is not executed. Yet, the language of the Plea Agreement in this case does not track the language of section 641A(a)(3), so that the phrase "initial term to serve" reasonably could be read to mean the total sentence imposed (that is, both the executed and suspended parts of the sentence). Although that technically is how a split sentence works, the wording of the Plea Agreement addresses the executed and suspended portions of the split sentence separately: "The initial time to serve," which was not to exceed eight years, and "the balance of the sentence," which was to be suspended and

for which no time limit was designated. Moreover, in the context of a split sentence, it is clear that "initial time to serve" means the executed part of the sentence, during which the defendant will be serving time in prison.

The appellant's interpretation of the phrase "initial time to serve" not only runs contrary to its meaning in the context of the full paragraph in which it appears, but also would render other language in that paragraph meaningless. Specifically, the phrase "the balance of the sentence suspended in favor of supervised probation" loses meaning under the appellant's reading of the paragraph. If, as the appellant argues, the "initial time to serve" is the total sentence, then there would be no "balance of the sentence" beyond that. The phrases are only both meaningful when the total number of years of the sentence is higher than the number of years in the "initial time to serve"; then, there is a "balance," i.e., a differential of years for which execution of the sentence is suspended, in favor of probation.

The court's sentence of 15 years, of which seven years were to be served in prison with the balance (eight years) suspended, in favor of probation, was not contrary to the terms of the Plea Agreement.

## II.

The appellant next contends that the court erred by imposing a sentence based on impermissible considerations.

The victims of the burglary in this case were Dale and Linda Harrison, who were neighbors of the appellant and had known him from the time he was a young child. The burglary took place at the Harrisons' house, on October 20, 1999. Several items of jewelry and a VCR were taken in the burglary; a number of the pieces of jewelry had sentimental value to the Harrisons. The appellant was arrested after records of a nearby pawn shop disclosed that some of the missing jewelry had been pawned by him on October 21, 2000. The pawn shop sales clerk knew the appellant, as they had been high school classmates. She told the police that the

appellant had been accompanied in the pawn shop by an older man named Joe Godsey.

The appellant's sentencing hearing took place in conjunction with his guilty plea. Mr. and Mrs. Harrison were called to testify by the State. The appellant testified on his own behalf. The defense also called Becky Willoughby, a drug and alcohol treatment counselor who had known the appellant for many years and had assisted him in obtaining treatment for heroin addiction; the appellant's mother, Debra Lane Coulbourne; and his employer, Jay Covey.

Mrs. Harrison testified, in relevant part, that after the appellant was arrested the detective investigating the case had told her that the appellant "would not talk that he would just plead the Fifth," from which she concluded that the appellant "was not interested in helping" her get back the items of jewelry that had been stolen but not recovered from the pawn shop. Mrs. Harrison also testified that the appellant had not made contact with her to explain or apologize for his conduct.

The appellant testified that after he was charged, he consulted defense counsel and was advised "not to say anything to anybody." He explained that that was the reason he had not said anything to the Harrisons; also, he understood that, as a condition of his bond, he was to have no contact with them. The appellant then explained that he had told Joe Godsey that the Harrisons kept their door unlocked, that Godsey had taken the items from the Harrisons' house, and that they together had pawned the items and used the money for drugs. The appellant told the Harrisons he was sorry for what he had put them through and that he had lost their trust.

After the witnesses had testified, the guilty plea had been put on the record, and counsel had made their arguments to the court, the appellant exercised his right of allocution and again apologized to the Harrisons.

The court then proceeded with sentencing, addressing the appellant. After commenting on the sentimental value to the Harrisons of several of the items that were stolen and not recovered, the sentencing judge said:

Your explanations for the delay in coming clean are accepted as such but they reveal to me a certain lack of compassion and understanding that I don't follow. It's one thing while you're on drugs but it's another when you come clean. There is nothing in the world that would have prevented you from sending a letter to the State's Attorney's office saying, "I don't know how to do this without violating my bond but please Mr. State's Attorney or Deputy Baker or whoever, would you please give this letter to the Harrisons telling them how genuinely sorry I am. And see if you can find out for me how much money it is that I've cost them so I can start paying them." All of this time not one dollar has been offered or paid by you to the Harrisons. What we're doing Mr. Ridenour is the Court is being forced to make you do what a person who shows compassion and remorse would have done voluntarily anyway. If I had a lawyer that told me, "You mean it's illegal for me to apologize to somebody? It may be illegal but you ain't my lawyer any more." And if we're talking about the church and ministry and everything, I cannot believe people who will go to church wouldn't know that the first thing you would do would be to ask for forgiveness and apologize. And for a Judge to be sitting up here on a non-Sunday and explaining to people that that's just what we do maybe explains how far our society is degenerated....

The judge imposed the sentence and, thereafter, defense counsel took exception on the record to the judge "holding [the appellant's reluctance to come forward] against him because he was merely exercising his Fifth Amendment right." The judge responded:

Oh I understand that's your point.... Now do me the courtesy and tell me you understand what I said. The right thing to do is not always the legal thing to do. You can advise him whatever you want and he can take your advice but there are consequences to it, many times. And a person who doesn't show remorse at the right time for the right reason should be a factor considered in sentencing. And I did and I don't mind standing by that.... And if the Court

of Appeals wants to say on the record that Judges should not say that people should apologize to victims then I want to be the first one in line at the polls the next time one of those Court of Appeal's [sic] Judges comes up. And I want to give a Lay day sermon in churches on that. That's when we ought to hang up the law if it's wrong, illegal or immoral to apologize to a victim for the wrong you've done them. That's even in the Ten Commandments which is about as old a law as you can get. That's what I'm saying.

On appeal, the appellant argues that the sentencing judge took into account that, until the day the guilty plea was entered, the appellant had exercised his Fifth Amendment right to remain silent. The appellant also argues that the sentencing judge erred in taking into account that the appellant's conduct did not conform to the dictates of the Bible, including the Ten Commandments. The State responds that even if the sentencing judge referenced impermissible considerations, they were not a basis for the sentence he imposed.

Trial judges are vested with broad discretion in sentencing. *Jackson v. State*, 364 Md. 192, 199, 772 A.2d 273 (2001) (citing *Poe v. State*, 341 Md. 523, 531, 671 A.2d 501 (1996); *Gary v. State*, 341 Md. 513, 516, 671 A.2d 495 (1996); *Jennings v. State*, 339 Md. 675, 683, 664 A.2d 903 (1995); *Jones v. State*, 336 Md. 255, 265, 647 A.2d 1204 (1994); and *Logan v. State*, 289 Md. 460, 480, 425 A.2d 632 (1981)). In exercising this discretion, the sentencing judge should consider "the facts and circumstances of the crime committed and the background of the defendant, including his or her reputation, prior offenses, health, habits, mental and moral propensities, and social background." *Jackson, supra*, 364 Md. at 199, 772 A.2d 273 (quoting *Poe, supra*, 341 Md. at 532, 671 A.2d 501). The judge's consideration should be undertaken with the aim of furthering the goals of the criminal justice system: punishment, deterrence, and rehabilitation. *Id.* at 199, 772 A.2d 273.

A sentence is subject to appellate review on three bases: (1) whether it is in violation of federal or state constitu-

tional guarantees; (2) whether the sentencing judge was motivated by ill-will, prejudice, or other impermissible considerations; and (3) whether the sentence is within statutory limits. *Id.* at 200, 772 A.2d 273 (citing *Gary, supra,* 341 Md. at 516, 671 A.2d 495). As stated above, in the instant case, the appellant argues that the sentencing judge took "impermissible considerations" into account, and imposed a harsher sentence as a result.

*Johnson v. State,* 274 Md. 536, 336 A.2d 113 (1975), is instructive. In that case, the defendant was charged with burglary, housebreaking, larceny, and receiving stolen goods. He pled not guilty, and proceeded to trial, maintaining his innocence. The jury found him guilty of burglary. He was sentenced to twelve years in prison. The following colloquy took place between the sentencing judge and the defendant, immediately before the sentence was imposed:

THE COURT: What lesson have you learned when you were not telling the truth about it at the time of trial?

THE DEFENDANT: I wasn't telling the truth about it?

THE COURT: That's right. The jury didn't believe you about this wild story about a man running out and asking you to hold something; that's perfectly ridiculous. The jury didn't accept it and I didn't accept it. You weren't telling the truth.

THE DEFENDANT: I was telling the truth.

THE COURT: Very well. A necessary ingredient to leniency in any case is the attitude of the individual.

THE DEFENDANT: Yes sir.

THE COURT: And when you sit up here and lie about it, and you're not telling the truth. You think you're going to get away with it. That attitude is not consistent with any consideration for leniency. If you had come in here after this happened, before the other trouble you got into—*if you had come in here with a plea of guilty and been honest about [it] and said, "of course I did it," which you did, you would probably have gotten a modest sentence,* concurrent with the one in the District of Co-

lumbia, and you would have gotten out of it. But with this attitude that you have you can't receive that kind of treatment.

*Johnson,* 274 Md. 536, 539, 336 A.2d 113 (emphasis added).

On appeal to this Court, the defendant argued that the sentencing judge had impermissibly considered, and held against him, his election to plead not guilty. This Court rejected his contention. *Johnson v. State,* 21 Md.App. 214, 319 A.2d 581 (1974). The Court of Appeals granted *certiorari* and reversed. 274 Md. at 545, 336 A.2d 113 (1975). Judge Digges, speaking for the Court, stated:

Even though we firmly believe that the judge at sentencing can and should take into account a broad spectrum of considerations, there do exist, in order to protect the fundamental rights of the offender, restrictions on this latitude. Thus, in view of what is at stake for one who is charged with a crime, *it is improper to conclude that a decision, constitutionally protected, not to plead guilty and in doing so to require the State to prove the defendant's guilt beyond a reasonable doubt, is a factor which ought to, in any way, influence the sentencing judge to the detriment of the accused.*

*Id.* at 542–43, 336 A.2d 113 (footnotes omitted) (emphasis added).

The Court in *Johnson* noted that the sentencing judge's reference to a harsher sentence for failing to plead guilty was equivocal, but nonetheless found that "the [sentencing judge's] words . . . manifest that an impermissible consideration may well have been employed. Any doubt in this regard must be resolved in favor of the defendant." *Id.* at 543, 336 A.2d 113. The Court went on to emphasize that at sentencing "a price may not be exacted nor a penalty imposed for exercising the fundamental and constitutional right of requiring the State to prove, at trial, the guilt of the petitioner as charged." *Id.* The Court added that the choice to exercise other constitutional rights, including those embodied in "Amendments V and VI," as well as "Articles 21 and 22 of the Maryland Declaration of

Rights," may not be held against a defendant in sentencing. *Id.* at 543 n. 5, 336 A.2d 113. Accordingly, the Court of Appeals vacated the sentence and remanded the case for re-sentencing.

In *Hurley v. State*, 60 Md.App. 539, 483 A.2d 1298 (1984), this Court examined whether a sentencing judge imposed a more severe sentence on the defendant because he had exercised his Fifth Amendment right to remain silent. The defendant had been tried and convicted of manslaughter for the death of his wife, whose body was never recovered. At sentencing, the judge commented that he had received letters from the wife's family expressing the pain they had suffered because of their inability to provide a Christian burial for the victim. The sentencing judge then explained his reasons for imposing the sentence:

> But, I have this big problem, Mr. Hurley and that is I have no reason to consider a lesser than a maximum sentence that the Court allows—that the law allows. I have a death, I have the absence of a body, if I accept the jury's verdict, which I do, I have to conclude that you in some manner disposed of the body or secreted it. And, I must say had that not occurred or even understandably having occurred, that there was some action or some movement on your part to reveal the circumstances and to reveal the location of the body, that would obviously have an impact and it would be something that the Court might consider.
>
> Your immediate denial and your continued denial is understandable, that is a natural reaction. The attempt to cover up is understandable, that is a natural reaction. But there comes a point when we must as human beings accept a situation and attempt, as best we can, to come back and to rehabilitate it. And I feel that you have not reached that point. And for that reason, the Court cannot consider that.

*Id.* at 562–63, 483 A.2d 1298. Although the applicable guidelines suggested a sentence of four years, the trial court imposed a 10–year sentence. which the defendant appealed to this Court.

On appeal, the defendant argued that the sentencing judge's statements indicated that he had taken into account that the defendant had invoked his Fifth Amendment right to remain silent, and had imposed a more severe sentence because the defendant elected to exercise that right. This Court rejected his argument. We explained that the sentencing judge had discretion to deviate from the guidelines and in doing so to consider "the convicted person's background and other relevant matters, such as the gravity of the offense for which the person was convicted." *Id.* at 563–64, 483 A.2d 1298 (quoting *Henry v. State,* 273 Md. 131, 146–47, 328 A.2d 293 (1974) (quoting *Henry v. State,* 20 Md.App. 296, 314–15, 315 A.2d 797 (1974))). Furthermore, "[i]n assessing the gravity of the offense, a proper consideration is the effect the crime has had upon the victims." *Id.* at 564, 483 A.2d 1298. After reviewing the sentencing judge's comments in full, and not out of context or in isolation, we concluded that he had not weighed against the defendant his election to exercise any fundamental right. Rather, the sentencing judge simply had considered the impact the defendant's crime had had on the victim's family. We added, however, "that if the [sentencing] court did, as appellant suggests, impose a more severe sentence because he elected to remain silent, that there would be cause for remand." *Id.* at 565, 483 A.2d 1298.

In the instant case, although Mrs. Harrison complained in her testimony about the appellant's failure to come forward to help her recover her missing items of jewelry, the sentencing judge's remarks were not directed to the effect of the appellant's conduct on the victims. They were directed to the appellant's failure to come forward immediately to apologize and pay restitution to the victims, either directly or by communicating with the State's Attorney's Office. Indeed, the sentencing judge made plain that, in his view, the defendant should have taken those steps even if it meant disobeying his lawyer's advice to remain silent, and went so far as to suggest that the appellant should have discharged his lawyer for advising him to remain silent. The overall thrust of the sentencing judge's remarks was to criticize the appellant for

not acknowledging his guilt "the first thing" after the break-in—*i.e.*, for exercising his constitutional right to remain silent. The sentencing court plainly erred in taking into consideration the appellant's decision to exercise his Fifth Amendment right to remain silent in sentencing him.

Notwithstanding that the sentence imposed met the criteria of the Plea Agreement, and that the sentencing court considered many permissible factors in fashioning the sentence, the sentencing judge's own words dispel any notion that the appellant's election to remain silent, up to the day he pled guilty, did not weigh against him in sentencing. In response to defense counsel's entreaty that the sentencing judge not hold against the appellant his choice to remain silent, particularly because defense counsel had advised him in that respect, the judge said, in no uncertain terms, that there were "consequences" to the appellant for following that advice instead of showing remorse "at the right time." Clearly, the judge's impermissible consideration of the appellant's exercise of his Fifth Amendment rights factored against the appellant in sentencing. Accordingly, we shall vacate the appellant's sentence and remand the case for a new sentencing hearing. Because we conclude that that hearing should take place before another judge, we decline to address the appellant's argument that the sentencing judge acted improperly in considering whether the appellant's conduct conformed to the dictates of the Bible.

**SENTENCE VACATED AND CASE REMANDED TO THE CIRCUIT COURT FOR CAROLINE COUNTY FOR RE–SENTENCING IN ACCORDANCE WITH THIS OPINION. COSTS TO BE PAID BY CAROLINE COUNTY.**